513 S.E.2d 374

**PROFESSIONAL SAMPLERS, INC., Appellant,**

v.

**SOUTH CAROLINA EMPLOYMENT SECURITY COMMISSION, Respondent.**

**No. 2944.**

Court of Appeals of South Carolina.

Heard Jan. 12, 1999.

Decided Feb. 16, 1999.

Lex A. Rogerson, Jr., of Lexington; and B.W. Enlow, of Columbia, for appellant.

H.W. Funderburk, Jr., of SC Employment Security Commission, of Columbia, for respondent.

HEARN, Judge:

Professional Samplers, Inc. (Samplers) appeals from a South Carolina Employment Security Commission (Commission) decision holding Samplers' product demonstrators are employees for purposes of state unemployment insurance coverage. Samplers argues its compliance with the Commission's determination is preempted by federal law. We disagree and affirm.

### Facts/Procedural History

Samplers contracts with food distributors, manufacturers, and retailers to provide personnel to demonstrate products, primarily by distributing samples and advertising materials. Product demonstrators are frequently seen in supermarkets offering prepared food samples. The demonstrators are often retired individuals who work intermittently, often with several

agencies. Samplers describes its demonstrators as "casual laborers."

Samplers historically has treated its demonstrators as independent contractors rather than employees. On February 15, 1995, a Commission employee issued a determination that the demonstrators were employees and that Samplers must file all future state unemployment tax returns consistent with this determination. After a hearing on July 31, 1995, the hearing officer upheld the determination. The Commission affirmed by order dated January 31, 1997. On appeal to the circuit court, Samplers conceded that the facts supported the Commission's finding that the demonstrators were properly classified as employees. Samplers contended, however, that it would forfeit a "safe haven" available under federal law if it were forced to comply with the Commission's ruling. The circuit court affirmed. Samplers appeals.

## Standard of Review

■ The scope of this court's review is governed by South Carolina Code section 1–23–380(A)(6) (Supp.1998). We may reverse or modify an administrative decision "if such decision is affected by errors of law, characterized by an abuse of discretion, or clearly erroneous in view of the substantial evidence on the whole record." *Todd's Ice Cream, Inc. v. South Carolina Employment Sec. Comm'n*, 281 S.C. 254, 258, 315 S.E.2d 373, 375 (Ct.App.1984) (holding that the Commission is an "agency" within the meaning of the Administrative Procedures Act codified at S.C.Code Ann. § 1–23–310 *et seq.*), *cert. denied* (July 25, 1984).

## Discussion

Because Samplers concedes that its demonstrators are properly classified as employees under the common-law "right to control" standard,[1] the sole issue on appeal is whether

---

1. Whether a worker is an employee or an independent contractor is a fact-specific determination reached by applying certain general common-law principles. *See, e.g., Spivey v. D.G. Constr. Co.*, 321 S.C. 19, 21, 467 S.E.2d 117, 119 (Ct.App.1996) (The principal factors showing right to control are: direct evidence of right to or exercise of control, method of payment, furnishing of equipment, and right to discharge.), *cert. denied* (Aug. 26, 1996). Both the Commission and the IRS use

Samplers' compliance with the Commission's decision is preempted by operation of federal law. Samplers argues its qualification for a safe haven under the Revenue Act of 1978, section 530 (as amended), Internal Revenue Code section 3401 note (1986) [hereinafter section 530] allows it to avoid complying with the Commission's determination under preemption principles. We disagree.

Samplers has enjoyed the benefits of a statutorily created safe haven under section 530, which states in part:

(a) Termination of Certain Employment Tax Liability

(1) In general—If—

(A) for purposes of employment taxes, the taxpayer did not treat an individual as an employee for any period, and

(B) in the case of periods after December 31, 1978, all Federal tax returns (including information returns) required to be filed by the taxpayer with respect to such individual for such period are filed on a basis consistent with the taxpayer's treatment of such individual as not being an employee, then for the purpose of applying such taxes for such period with respect to the taxpayer, the individual shall be deemed not to be an employee unless the taxpayer had no reasonable basis for not treating such individual as an employee.

§ 530(a)(1)(A)–(B). The statute then enumerates several standards, any one of which will satisfy the condition precedent of a reasonable basis for not treating workers as employees. § 530(a)(2). Samplers has qualified under the long-standing industry practice standard. § 530(a)(2)(C).

■ Remaining qualified for the safe haven requires consistency in treatment. It will not apply if the taxpayer has treated any individual in a similar position as an employee for purposes of employment taxes for any period [2] after December 31, 1977. § 530(a)(3). While the IRS has acknowledged Samplers' qualification for the safe haven, it has also acknowledged that it considers the demonstrators to be employees

---

common-law tests when classifying workers as employees. *See* § 530(c)(2); S.C.Code Ann. § 41–27–230(1)(b).

2. Samplers files quarterly federal returns.

rather than independent contractors. Accordingly, any change in Samplers' treatment of these individuals for employment taxation purposes will eliminate the safe haven that Samplers currently enjoys. The Commission's determination that the demonstrators are employees will no longer make consistency of treatment possible for Samplers.

Samplers argues the Commission's determination makes compliance with both federal and state law in this situation impossible. If it complies with state law, it will lose its federal safe haven and be subject to federal tax liability. *See* § 530. If it complies with federal law, it will be subject to penalties for not complying with state law. *See* S.C.Code Ann. §§ 41–31–350, 41–41–50. Thus, it contends an actual conflict exists such that the state law must be preempted. Samplers argues further that forcing it to comply with state law would thwart the objectives and purposes Congress intended when enacting the federal law. We disagree.

■■■ Federal law may preempt state law in three ways: first, Congress may expressly define the extent to which it preempts state law; second, Congress may occupy a field of regulation, impliedly preempting state law; third, at issue here, a state law may be preempted to the extent it conflicts with federal law. *Michigan Canners & Freezers v. Agricultural Mktg. & Bargaining Bd.,* 467 U.S. 461, 469, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984) (citations omitted); *see also Abbot by Abbot v. American Cyanamid Co.,* 844 F.2d 1108, 1111 (4th Cir.1988). Such a conflict arises when either compliance with both laws is impossible or when the state law frustrates the federal purpose and creates an obstacle to the fulfillment of federal objectives. *Michigan Canners & Freezers,* 467 U.S. at 469, 104 S.Ct. 2518; *Tarallo v. Searle Pharm., Inc.,* 704 F.Supp. 653, 658 (D.S.C.1988); *Peoples Program for Endangered Species v. Sexton,* 323 S.C. 526, 530, 476 S.E.2d 477, 480 (1996).

■■■ We do not think our state law creates an obstacle to the fulfillment of federal objectives. The purpose of section 530 was to curb the IRS's practice of reclassifying subcontractors as employees for federal unemployment taxation purposes; it was aimed at controversies arising from "overzealous" IRS tax collection activity. *Ren–Lyn Corp. v. United*

*States,* 968 F.Supp. 363, 366 (N.D.Ohio 1997) (citations omitted). By preventing the IRS from reclassifying workers without good cause, section 530 protects "individuals whom taxpayers in good faith treated as independent contractors provided the taxpayers fulfilled tax filing requirements."[3] H.R.Conf.Rep. No. 95–1800, at 271 (1978), *reprinted in Internal Revenue Acts, 1977–1979,* at 1154 (West 1981). There is no indication in the act or its legislative history that a wider purpose was intended. *Cf. Michigan Canners & Freezers,* 467 U.S. 461, 104 S.Ct. 2518, 81 L.Ed.2d 399 (finding a conflict existed and state law was preempted when state law required agricultural associations to deal on behalf of and bind nonmembers, thereby frustrating the federal purpose of laws designed to protect producers' rights not to be coerced into joining an agricultural association or being bound by its contracts).

■ We also do not think there is an actual conflict sufficient to warrant preemption. Samplers' argument that compliance with both state and federal laws is impossible is not relevant in this situation. The Federal Unemployment Tax Act (FUTA), codified as I.R.C. § 3301 *et seq.* (1986), clearly envisions complementary state legislation. I.R.C. §§ 3302–04. However, section 530 is not a part of FUTA and is not a mandatory federal law with which every taxpayer who may be subject to unemployment tax liability must comply; it is merely an option afforded to those who do qualify. Taxpayers who do not qualify for section 530's protections are many, and yet they easily comply with both state and federal unemployment tax laws. Samplers' inability to comply with the consistency requirement if it treats its workers as employees on its state returns does not affect its ability to comply with the overall federal scheme of unemployment taxation.

■ Moreover, in defining the construction of our statutory scheme, the South Carolina legislature has stated:

Nothing in [the South Carolina Employment Security Law] Chapters 27 through 41 of [Title 41] ... shall be construed to cause the Commission or the courts of this

---

**3.** Due to the Commission's determination, Samplers no longer has a good faith basis for treating its demonstrators as independent contractors.

State in interpreting such chapters to be bound by interpretations as to liability or non-liability of employers by Federal administrative agencies, nor is it the intent of the General Assembly to require an identical coverage of employers under such chapters with that under § 3101 et seq. of the Federal Internal Revenue Code.

S.C.Code Ann. § 41–27–30. Federal law does not prevent a state from extending the coverage of its unemployment insurance law beyond federal requirements. *Salem College & Academy, Inc. v. Employment Div.,* 298 Or. 471, 695 P.2d 25, 29 (1985) (*en banc*) ("Whether a state chooses to conform its law to federal standards is its own business as far as FUTA is concerned."). In fact, courts have held favorable classification by a state employment security agency is not binding on a section 530 classification. *Spicer Accounting, Inc. v. United States,* 918 F.2d 90, 94 (9th Cir.1990). We find persuasive the language of the Virginia Court of Appeals:

"[T]he fact that an exemption [from employment] may exist under federal law is not determinative of whether an exemption exists under the Virginia [Unemployment Compensation] Act." We are governed by the definition of "employment" contained in [our Virginia statutory scheme]. Accordingly, we reject the contention that we are, or should be, bound by the "safe haven" granted ... by the IRS.

*Yard Bird, Inc. v. Virginia Employment Comm'n,* 28 Va.App. 215, 503 S.E.2d 246, 252 (1998) (quoting *Virginia Employment Comm'n v. Peninsula Emergency Physicians, Inc.,* 4 Va.App. 621, 359 S.E.2d 552, 555 (1987)). Thus, we find no conflict between our state's broader coverage without a safe haven and the federal scheme with a safe haven.[4]

---

4. Samplers contends that losing its safe haven will subject it to enormous retroactive tax liability. This assertion appears erroneous. Section 530 applies on a period by period basis. § 530(a)(1)(B). Provided both conditions are met for a period, no tax liability will accrue. *Id.; see also* H.R.Conf.Rep. No. 95–1800 at 271 (1978), *reprinted in Internal Revenue Acts, 1977–1979,* at 1154 (West 1981) (acknowledging assessments under section 530 apply to quarterly periods only when taxation for those periods is not barred by compliance with the statute's conditions). Thus, any change in Samplers' treatment of workers as employees on its tax returns will likely subject it to liability only for the period in which the change is first manifested and prospectively therefrom. In

Samplers argues that the unemployment laws were not enacted to protect workers such as its demonstrators and that none of its demonstrators has ever filed for unemployment benefits. Consequently, forcing it to comply with the Commission's determination would be illogical. Initially, we note that because Samplers has never treated its workers as employees for unemployment tax purposes, it is not surprising that they have never attempted to avail themselves of a benefit for which independent contractors do not qualify. Further, any allegation that the Commission would contest coverage of a demonstrator who did apply for benefits misses the point that the Commission would be bound by its determination that the demonstrators are employees just as Samplers is bound.

We find no conflict between our statutory employment scheme and the federal law. Nor do we find that our statutory scheme frustrates federal objectives. Accordingly, the order of the circuit court is

**AFFIRMED.**

CONNOR and HUFF, JJ., concur.

---

any case, a party's potential federal tax liability is not a factor in this court's decisions.