622 S.E.2d 213

James SIMMONS, Plaintiff,

v.

MARK LIFT INDUSTRIES, INC.; Mark Industries, Inc.; Terex Corporation; BPS Equipment Rental and Sales, Inc.; and Prime Equipment and Rental Service Corporation, Defendants.

No. 26050.

Supreme Court of South Carolina.

Heard April 7, 2005.
Decided Oct. 24, 2005.
Rehearing Denied Dec. 12, 2005.

John D. Kassel and Theile M. McVey, both of Columbia, for Plaintiff.

Robert W. Foster, Jr., George B. Cauthen, and C. Mitchell Brown, all of Nelson, Mullins, Riley & Scarborough, L.L.P., of Columbia, for Defendant Terex Corp.

Clark W. Dubose and Phillip Florence, Jr., both of Haynsworth Sinkler Boyd, P.A., for Defendant BPS Equipment Rental and Sales, Inc.

John S. Nichols of Bluestein & Nichols, LLC, of Columbia, for Amicus Curiae, the South Carolina Trial Lawyers Association.

Gray T. Culbreath of Collins & Lacy, P.C., of Columbia, for Amicus Curiae, the South Carolina Manufacturers' Alliance.

David M. Collins of Buist Moore Smythe McGee, P.A. of Charleston, for Amicus Curiae, the Products Liability Advisory Council, Inc.

Justice WALLER:

We granted certification from the United States District Court of South Carolina pursuant to Rule 228, SCACR, to address the following three questions:

1. May a plaintiff maintain a product liability claim in South Carolina under a successor liability theory against a defendant which purchased only assets of a voluntarily bankrupt selling company in an arms-length and court-approved bankruptcy sale and the purchasing company did not approve of, participate in, cause, or contribute to the selling company's bankruptcy?

2. In the product liability context in South Carolina, what test is employed to determine whether there is successor liability of a company which purchased the assets of an unrelated company?

3. May a plaintiff maintain a product liability claim in South Carolina under a successor liability theory against a defendant when there are one or more other viable product liability defendants that may be liable to the plaintiff as a post-manufacturer seller of the allegedly defective product?

## FACTUAL/PROCEDURAL BACKGROUND

James Simmons (Simmons) brought a product liability action in state court against Mark Industries, Inc., Terex Corp. (Terex), Mark Lift Industries, Inc., and BPS Equipment Rental and Sales, Inc. (BPS Equipment). The case was removed to federal court based on diversity jurisdiction. Simmons' only basis of liability against Terex and Mark Lift Industries is a successor liability theory.

Simmons' complaint alleges he was injured in a work-related accident at a construction site on August 9, 1999, when an elevated scissorlift aerial work platform collapsed. Mark Industries (Mark), a California corporation, designed, manufactured and sold the scissorlift in 1990. BPS Equipment sold the scissorlift to the end user, which provided it for use on the construction site.

Mark filed for bankruptcy in federal bankruptcy court in July 1991. The bankruptcy court entered an order granting Mark's motion to sell specified assets for adequate consideration on November 6, 1991. Terex was the winning bidder for the assets at an auction the next day.

Following the auction, Mark and Terex entered into a purchase agreement. Section 1.1 of the agreement provides:

Except as otherwise specifically provided in this Agreement, at the Closing ... all the Assets shall be transferred from seller to Buyer free and clear of all security interests, liens, claims, encumbrances, restrictions or rights of others of every kind and description, including, without limitation, tax liens. Nothing herein shall be construed as the assumption

of or by Buyer of any liabilities of the Seller, including, without limitation, any liability for products manufactured or sold by Seller.

Under the agreement, the assets purchased by Terex included the inventory of supplies, raw materials, work in progress, finished goods, trademarks, service marks, trade names, goodwill, all intellectual property, such as drawings, designs, blueprints, patents, licenses, and technology.

On November 13, 1991, the bankruptcy court issued an order approving the auction of assets and the terms and conditions of the purchase agreement entered into by Mark and Terex on November 7, 1991. Specifically, the order provided "that [Mark] is authorized to sell the assets of its estate to Terex Corporation, the maker of the highest and best offer at the auction, on terms and conditions consistent with the Purchase Agreement and related attachments." The order stated that "the sale of the assets authorized hereby is free and clear of any and all liens and encumbrances as may presently attach to the assets . . . ." The order further stated that the "sale of assets shall be free and clear of all liens and encumbrances of those creditors who had adequate notice of the Debtor's motion and opportunity to appear and object at the time of the hearing on the Motion . . . ."

On December 5, 1991, Terex created a wholly owned subsidiary to implement the asset purchase agreement between Mark and Terex. The new corporation was named Mark Lift Industries, Inc. (Lift Industries). The assets of Mark were transferred to Lift Industries several days later.

Lift Industries continued to manufacture similar scissorlifts at the California plant for several months, until mid–1992. At this time, Lift Industries closed the plant in California, and relocated the assets and equipment to Terex's manufacturing plant in Waverly, Iowa. Only three Mark employees, none of whom were officers or directors, continued with Terex following the closing of Lift Industries' California plant. From 1992 to 2001, Lift Industries marketed and distributed scissorlifts from its Iowa plant using the trade name used by Mark.

Terex did not have any business relationship with Mark until purchasing its assets in the bankruptcy court auction.

312

There has never been any commonality of officers, directors, or stockholders between Mark and Terex.

## DISCUSSION

We find the certified questions may be resolved in accordance with existing South Carolina authority.

In *Brown v. American Ry. Express Co.*, 128 S.C. 428, 123 S.E. 97 (1924), this Court held that in the absence of a statute, a successor or purchasing company ordinarily is not liable for the debts of a predecessor or selling company **unless** (1) there was an agreement to assume such debts, (2) the circumstances surrounding the transaction warrants a finding of a consolidation or merger of the two corporations, (3) the successor company was a mere continuation of the predecessor,[1] or (4) the transaction was entered into fraudulently for the purpose of wrongfully defeating creditors' claims. *Brown v. American Ry. Express Co.*, 128 S.C. 428, 123 S.E. 97 (1924) (successor corporation which purchased part of predecessor's assets was not liable for lost shipment by predecessor, where successor did not assume liability for such debts and predecessor remained a live and going concern with substantial assets).

█ Our opinion in *Brown* sets forth the proper test to determine, in a products liability action, whether there is successor liability of a company which purchases the assets of an unrelated company. Certified Question number 2 is answered accordingly.

---

1. Essentially, the dissent advocates an expansion of the mere continuation exception. However, as noted by the dissent, the majority of courts interpreting the mere continuation exception have found it applicable **only when there is commonality of ownership,** *i.e.,* **the predecessor and successor corporations have substantially the same officers, directors, or shareholders.** We decline to extend the exception to cases in which there is no such commonality of officers, directors and shareholders. Further, we find no conflict with *Holloway v. John E. Smith's Sons Co.*, 432 F.Supp. 454 (D.S.C.1977). We do not find that the *Holloway* court established a new test of successor liability. Although the court in *Holloway* did not cite the test established in *Brown*, it applied the mere continuation exception. Unlike the present case in which Mark Lift and Terex did not share common officers, directors and shareholders, it appears from a reading of *Holloway* that there was, indeed, a commonality of ownership. Accordingly, the mere continuation exception was properly applied to that case.

Further, we conclude a plaintiff may maintain a state law-based product liability claim under a successor liability theory against a successor corporation which purchased the predecessor's assets in a voluntary sale approved by the federal bankruptcy court **provided** one of the exceptions set forth in the *Brown* opinion applies. Accordingly, we find the District Court in this case may answer Certified Question number 1 by reference to the existing precedent set forth in *Brown.*

Lastly, Terex urges us to find it may not be held liable as a successor because Simmons may seek recovery from the seller, BPS Equipment. Terex asserts that when other entities may answer in damages under a strict liability or negligence theory, it is unnecessary to hold a successor corporation liable in a product liability action. We disagree.

■ We find a plaintiff may maintain a product liability claim under a successor liability theory against a defendant when there are one or more other viable product liability defendants. The status and availability of other potential defendants is irrelevant in determining the issue of a successor corporation's liability in a product liability action. However, as noted in the answer to the first two certified questions, a plaintiff must fall within one of the four exceptions set forth in *Brown.*

We hold that each of the certified questions presented in this case may be answered in accordance with our opinion in *Brown.*

**CERTIFIED QUESTIONS ANSWERED.**

MOORE, J., Acting Justices JOHN W. KITTREDGE and JAMES R. BARBER, concur. BURNETT, J., dissenting in a separate opinion.

Justice BURNETT:

Because I believe the mechanical application of the factors recited in *Brown v. American Ry. Express Co.,* 128 S.C. 428, 123 S.E. 97 (1924) without considering the facts which may support a finding of a consolidation, merger or continuation of the predecessor entity result in an injustice to the consumer, I respectfully dissent, in part.

The facts set forth by the district court and the majority reveal that Plaintiff Simmons alleges he was injured by the collapse of an elevated scissorlift aerial work platform manufactured in 1990 by the predecessor corporation, Mark Industries, Inc. (Mark). Terex and its wholly owned subsidiary, Mark Lift Industries, Inc. (Lift Industries) purchased Mark's assets in bankruptcy in 1991. From December 1991 to September 1992, Terex continued to manufacture the same scissorlift platform as Mark had manufactured at the same California factory—using essentially the same technology, same design, same equipment, same marketing materials, same logo, same tradename, same supplier list, same dealer list, same customer list, and same employees. Terex then moved the factory to Iowa, where from 1992 to 2001 it continued to manufacture the same scissorlift as Mark had manufactured—still using essentially the same technology, same design, same equipment, same marketing, same logo, same tradename, same supplier list, same dealer list, same customer list, and a few of the same employees.

The federal district court has presented the Court with three questions, which I will address in the following order:

1. In the product liability context in South Carolina, what test is employed to determine whether there is successor liability of a company which purchased the assets of an unrelated company?

2. May a plaintiff maintain a product liability claim in South Carolina under a successor liability theory against a defendant which purchased only assets of a voluntarily bankrupt selling company in an arms-length and court-approved bankruptcy sale and the purchasing company did not approve of, participate in, cause, or contribute to the selling company's bankruptcy?

3. May a plaintiff maintain a product liability claim in South Carolina under a successor liability theory against a defendant when there are one or more other viable product liability defendants that may be liable to the plaintiff as a post-manufacturer seller of the allegedly defective product?

## STANDARD OF REVIEW

In answering a certified question raising a novel question of law, this Court is free to decide the question based on its

assessment of which answer and reasoning would best comport with the law and public policies of this state and the Court's sense of law, justice, and right. *See I'On, L.L.C. v. Town of Mt. Pleasant,* 338 S.C. 406, 411, 526 S.E.2d 716, 719 (2000) (citing S.C. Const. art. V, §§ 5 and 9, S.C.Code Ann. § 14–3–320 and –330 (1976 & Supp.2004), and S.C.Code Ann. § 14–8–200 (Supp.2004)); *Osprey, Inc. v. Cabana Ltd. Partnership,* 340 S.C. 367, 372, 532 S.E.2d 269, 272 (2000) (same); *Clark v. Cantrell,* 339 S.C. 369, 378, 529 S.E.2d 528, 533 (2000) (same); *Antley v. New York Life Ins. Co.,* 139 S.C. 23, 30, 137 S.E. 199, 201 (1927) ("In [a] state of conflict between the decisions, it is up to the court to 'choose ye this day whom ye will serve'; and, in the duty of this decision, the court has the right to determine which doctrine best appeals to its sense of law, justice, and right.").

## LAW AND ANALYSIS

### 1. SUCCESSOR LIABILITY AFTER PURCHASE OF ASSETS

Simmons asserts the Court should adopt either of two exceptions to the general rule that a successor corporation which purchases the assets of a predecessor corporation is not liable for the predecessor's obligations and liabilities. .Both exceptions—continuity of enterprise and product line—are grounded in the premise that a person who is injured by a defective product should be able to bring a product liability action against a company which purchases the assets of an unrelated company and then continues manufacturing and distributing essentially the same product using the predecessor's assets, equipment, intellectual property and goodwill.

Terex contends we should reject both exceptions and instead apply the four traditional exceptions to the rule that a successor corporation, in an asset purchase, usually does not assume the liabilities of the predecessor entity. Terex argues that none of the four exceptions apply in this case, and Simmons' lawsuit should be dismissed on a motion for judgment as a matter of law.

In South .Carolina, in the absence of a statute, a successor or purchasing company ordinarily is not liable for the debts of a predecessor or selling company unless (1) there was an

agreement to assume such debts, (2) the circumstances surrounding the transaction warrants a finding of a consolidation or merger of the two corporations,[2] (3) *the successor company was a mere continuation of the predecessor,* or (4) the transaction was entered into fraudulently for the purpose of wrongfully defeating creditors' claims. *Brown v. American Ry. Express Co.,* 128 S.C. 428, 123 S.E. 97 (1924) (successor corporation which purchased part of predecessor's assets was not liable for lost shipment by predecessor, where successor did not assume liability for such debts and predecessor remained a live and going concern with substantial assets). The case at hand involves the application of the emphasized "mere continuation" exception.

Courts nationwide apply the general rule expressed in *Brown,* which originated in the common law, to determine successor liability in the context of contract and creditor-debtor cases. *E.g. Huff v. Shopsmith, Inc.,* 786 So.2d 383, 388 (Miss.2001); *Niccum v. Hydra Tool Corp.,* 438 N.W.2d 96, 98 (Minn.1989); *Martin v. Abbott Laboratories,* 102 Wash.2d 581, 689 P.2d 368, 384 (1984); *Schumacher v. Richards Shear Co.,* 59 N.Y.2d 239, 464 N.Y.S.2d 437, 451 N.E.2d 195, 198 (1983); *Johnston v. Amsted Indus., Inc.,* 830 P.2d 1141, 1142–43 (Colo.App.1992); 15 *Fletcher Cyclopedia Corporations* § 7122 (1999); 1 *American Law of Products Liability 3d* § 7:1 (2001).

Most courts traditionally have applied the mere continuation exception (also known as a *de facto* merger) contained in the general rule on successor liability only when there is commonality of ownership, *i.e.,* the predecessor and successor corporations have substantially the same officers, directors, or shareholders, and the business continues largely unchanged. *E.g.*

---

**2.** A merger, share exchange, or consolidation typically involves the transfer of stock, not just the transfer of assets such as real, personal, or intellectual property or goodwill. The predecessor corporate entity ceases to exist and is merged into the successor, or both cease to exist and are consolidated into a new corporation. It is widely accepted that the successor corporate entity in these situations is liable for all debts and obligations, including negligence and product liability claims, incurred by the predecessor. *See* S.C.Code Ann. § 33–11–101 to –108 (1990 & Supp.2004) (mergers and share exchanges); 15 *Fletcher Cyclopedia Corporations* §§ 7121–7122 (1999); 1 *American Law of Products Liability 3d* § 7:10 (2001). The issues presented in this case and others like it arise when only assets—not shares of stock—are sold or transferred to a successor corporation.

*Taylor v. Atlas Safety Equip. Co.*, 808 F.Supp. 1246, 1251 (E.D.Va.1992) (applying Virginia law and stating that continuity of shareholders and management is key element of mere continuation exception); 15 *Fletcher's Cyclopedia Corporations* § 7123.20 (discussing expansion of mere continuation exception); 1 *American Law of Products Liability 3d* §§ 7:10, 7:14, 7:19 (same); Phillip I. Blumberg, *The Continuity of the Enterprise Doctrine: Corporate Successorship in the United States Law,* 10 Fla. J. Intl. L. 365, 371 (1996) (listing cases for proposition that mere continuation doctrine applies "only where the successor has the same stockholders as the predecessor and conducts the same business with the same management, facilities, employees, products, and trade names").

I disagree with the majority that the certified questions may be resolved by relying exclusively on a general rule of corporate law set forth in *Brown* more than eighty years ago. The *Brown* court did not resolve the meaning of the mere continuation exception in South Carolina. *Brown* should be the starting point of our analysis, not the beginning and end of it.

Furthermore, *Brown* did not involve a bankrupt predecessor corporation or a defective product implicating modern product liability law. *Brown* was decided in the nascent days of product liability law, a time preceding widespread acceptance of basic product liability principles now well established in this state and elsewhere. In those days, the analysis of product liability cases was grounded primarily in negligence; the concept of strict liability in tort was not even a gleam in the eye of attorneys, judges, and professors who would develop and endorse the concept in the 1960s.

The mere continuation exception enunciated in *Brown*—while valid and sufficient under existing law in other settings such as a merger or consolidation—should be interpreted in a manner which encompasses product liability claims against a successor corporation in appropriate circumstances. An examination of the reasoning in *Brown,* as well as other precedent in this state, supports such an interpretation.

The basic rationale of the general rule expressed in *Brown* is obvious. "It would be manifestly unfair, unjust, and contrary to equity that [the successor] should thus acquire all of

the assets of the other corporation, and its franchise, both to be, and to do, leaving no one to be sued by its creditors and no property to satisfy its debts and other liabilities, and not itself become responsible for such debts and other liabilities. *If [the successor] takes the benefit, it must, as has so often been said, take the burden, which equitably attaches, with it."* *Brown* 128 S.C. at 432, 123 S.E. at 99 (emphasis added).

In an earlier case involving the same successor corporation as in *Brown,* but where the predecessor corporation no longer existed and the successor had agreed to resolve outstanding loss and damage claims, this Court rejected the successor's effort to avoid the claims with unusually strong language.

> The [successor's] position does not appeal to us; it is an attempt to dodge the damages that [the plaintiff] has sustained by a quirk and technical question of the law, and smacks too much of a skin game, and hand stacked and dealt to dealer from the bottom of the deck. . . . By its action [the successor] has allowed the [predecessor] to go out of existence and now proposes to let the [plaintiff] whistle for his money, and by its technicality, which would besmirch the character of any honest man, smacks its lips and licks its chops and congratulates itself on its shrewdness in avoiding its payment of a just claim.

*Brabham v. Southern Express Co.,* 124 S.C. 157, 117 S.E. 368 (1922).

In a similar vein, this Court has applied a trust-fund doctrine to ensure creditors may reach assets in the hands of the successor corporation when a transaction amounts to a *de facto* merger or consolidation. *See Beckroge v. S.C. Power Co.,* 197 S.C. 184, 194–95, 15 S.E.2d 124, 128 (1941) (transfer of assets from one corporation to another may amount to a merger in fact even when predecessor corporation continues to exist, particularly when amount paid by successor does not reflect true value of predecessor; in such cases, equity looks past form and at the real effect of the transaction and, by application of the trust fund doctrine, successor may be held liable to prior creditors to extent of assets received); *Huggins v. Commercial & Sav. Bank,* 141 S.C. 480, 140 S.E. 177 (1927) (successor bank which by transfer obtained all assets of predecessor bank held liable to depositor of predecessor

bank); *Ex parte Sav. Bank of Rock Hill,* 73 S.C. 393, 53 S.E. 614 (1906) (equity regards the property of a corporation as held in trust for the payment of debts, and recognizes the right of creditors to pursue the property wherever it may be transferred unless it has passed into the hands of a bona fide purchaser).

Our appellate courts rarely have addressed successor liability in the context of a tort action and have never done so in a product liability action. In *Long v. Carolina Baking Co.,* 190 S.C. 367, 3 S.E.2d 46 (1939), plaintiff was injured when her vehicle collided with a baking company truck. Carolina Baking, a North Carolina corporation, had operated a plant and done business in South Carolina since 1924. In 1935, two years before the wreck, all assets of the predecessor corporation (Carolina Baking) were transferred to a successor corporation (Columbia Baking), a newly chartered Delaware corporation with its principal offices in Atlanta. The predecessor was dissolved as a corporate entity, although no notice of dissolution was filed in South Carolina.

After the asset transfer, the successor continued to use the trade name of predecessor Carolina Baking, licensing the subject truck and its business in that name and using the name on its vehicles and buildings. Carolina Baking entered a general appearance and defended the action. The Court rejected the successor's attempt to avoid liability on the ground that Carolina Baking no longer existed and the plaintiff had failed to sue the proper corporate entity. "[T]he verdict and judgment against Carolina Baking Company [are] binding upon the existent corporate entity and its assets, by whatsoever name it may be known or called. The corporate fiction and the rules surrounding it have been of inestimable service in the affairs of business, but they must be applied in such a manner as to promote justice, not to hinder or defeat it." *Long,* 190 S.C. at 377, 3 S.E.2d at 50.[3]

In *Bryant v. Waste Management, Inc.,* 342 S.C. 159, 536 S.E.2d 380 (Ct.App.2000), the employee of a waste treatment plant sued the waste hauler for negligence after a waste

---

**3.** The Court employed the same analysis and reached the same result in a companion case involving the estate of a plaintiff decedent. *Long v. Carolina Baking Co.,* 193 S.C. 225, 8 S.E.2d 326 (1939).

container dropped on his foot, partially amputating it. The Court of Appeals concluded Waste Management was the proper defendant because Chambers Waste Systems, the original defendant, had been subsumed by USA Waste Services, which in turn had merged with Waste Management while the lawsuit was pending. The Court of Appeals rejected Waste Management's argument it had been improperly substituted as a defendant pursuant to Rule 25(c), SCRCP. *Id.* at 163–66, 536 S.E.2d at 382–84.

The above authority derived from contract and tort precedent reveals that our appellate courts have not looked favorably upon efforts by a successor corporation to employ corporate law principles to avoid liability to a wronged creditor or plaintiff. In addition, I have considered the numerous foreign decisions, treatises, and law review articles offered by the parties and amici curiae, as well as authority revealed by the Court's own research. I have studied the leading cases of *Turner v. Bituminous Cas. Co.*, 397 Mich. 406, 244 N.W.2d 873 (1976) (adopting continuity of enterprise exception) and *Ray v. Alad Corp.*, 19 Cal.3d 22, 136 Cal.Rptr. 574, 560 P.2d 3 (1977) (adopting product line exception), and their progeny. *E.g. Holloway v. John E. Smith's Sons Co.*, 432 F.Supp. 454 (D.S.C.1977) (applying continuity of enterprise exception) [4];

---

**4.** I disagree with the majority's conclusion there was commonality of ownership between the predecessor and successor corporations in *Holloway*. *Simmons*, Op. No. 26050, at n. 1. As I read *Holloway*, Hobam, Inc., purchased the assets of an unrelated, separate corporation known as John E. Smith Son's Co. and, in a common corporate tactic, retained the name and created a Hobam subsidiary called John E. Smith Son's Co. There is no indication that the officers, directors, and shareholders of Hobam were the same as the officers, directors, and shareholders of the old John E. Smith Son's Co. The district court explained that the successor business (the Hobam subsidiary) continued at the same address with virtually all of its previous employees, continued to maintain equipment sold by the predecessor, and held itself out to the public as a business entity under a name virtually identical to the predecessor corporation. *Id.* at 456. Furthermore, the case raised "[t]he question of whether or not the corporation which purchases the assets of *another business entity* is a continuation of the previous entity for purposes of products liability...." *Id.* at 455 (emphasis added). The district court in *Holloway* applied the rationale of *Cyr v. B. Offen & Co.*, 501 F.2d 1145 (1st Cir.1974), a leading "continuity of enterprise" case which in appropriate circumstances allows a successor corporation to be held liable for defective products manufactured by a defunct predecessor.

*Asher v. KCS Intern., Inc.,* 659 So.2d 598 (Ala.1995) (applying continuity of enterprise exception); *Savage Arms, Inc. v. Western Auto Supply Co.,* 18 P.3d 49 (Alaska 2001) (adopting continuity of enterprise); *Huff v. Shopsmith, Inc.,* 786 So.2d 383 (Miss.2001) (adopting product line exception); *Ramirez v. Amsted Indus., Inc.,* 86 N.J. 332, 431 A.2d 811 (1981) (adopting product line exception); *Garcia v. Coe Mfg. Co.,* 123 N.M. 34, 933 P.2d 243 (1997) (adopting product line exception); *Kradel v. Fox River Tractor Co.,* 308 F.3d 328 (3d Cir.2002) (product line exception is law of Pennsylvania); *Hill v. Trailmobile, Inc.,* 412 Pa.Super. 320, 603 A.2d 602 (1992) (applying product line exception); *Martin v. Abbott Laboratories,* 102 Wash.2d 581, 689 P.2d 368 (1984) (adopting product line exception); *Cyr v. B. Offen & Co.,* 501 F.2d 1145, 1151–56 (1st Cir.1974) (leading case adopting continuity of enterprise); *Russell v. Philip D. Moran, Inc.,* 122 N.H. 708, 449 A.2d 1208 (1982) (favorably citing *Cyr* and continuity of enterprise theory); *but see Simoneau v. South Bend Lathe, Inc.,* 130 N.H. 466, 543 A.2d 407 (1988) (calling *Cyr* into question because risk spreading, a basis of *Cyr* decision, is not accepted as a rationale for strict liability in New Jersey; however, court did not reject continuity of enterprise exception).[5]

I also have considered authority rejecting one or both exceptions. Courts rejecting successor liability in the product

As previously explained, the successor corporation in the present case continued to manufacture the same scissorlift as did the predecessor—using essentially the same technology, same design, same equipment, same marketing, same logo, same tradename, same supplier list, same dealer list, same customer list, and a few of the same employees. I agree with the rationale and outcome in *Holloway,* and cite it as additional support for the approach I believe the Court should adopt in the present case.

5. The continuity of enterprise and product line theories have been distinguished as follows:

[A] continuity of enterprise analysis seeks to establish whether there is substantial continuity of pretransaction and posttransaction *business activities* resulting from the use of the acquired assets, while a product line analysis seeks to establish whether there is a substantial continuity in the *products* resulting from the pretransaction and posttransaction use of the assets.

*Nissen Corp. v. Miller,* 323 Md. 613, 594 A.2d 564, 567 n. 1 (1991) (quoting 1 *American Law of Products Liability 3d* § 7:20) (emphasis in original).

liability setting have done so primarily because they believe it violates the principle that only those which are responsible for manufacturing and marketing a product should bear liability for its defects; the exceptions violate traditional principles of successor liability; the exceptions defeat the parties' expectations arising from the negotiation and sale of assets; the successor has no control over products already produced and marketed; smaller successor corporations might face financial ruin if held liable for a predecessor's products; and the issue should be left to the legislature. *E.g. Winsor v. Glasswerks PHX, L.L.C.,* 204 Ariz. 303, 63 P.3d 1040, 1046 (App. Div. 1 2003); *Johnston v. Amsted Indus., Inc.,* 830 P.2d 1141, 1146–47 (Colo.App.1992); *Bernard v. Kee Mfg. Co., Inc.,* 409 So.2d 1047, 1049–50 (Fla.1982); *Nissen Corp. v. Miller,* 323 Md. 613, 594 A.2d 564, 566–73 (1991); *Niccum v. Hydra Tool Corp.,* 438 N.W.2d 96, 99 (Minn.1989); *Jones v. Johnson Mach. and Press Co.,* 211 Neb. 724, 320 N.W.2d 481 (1982); *Simoneau v. South Bend Lathe, Inc.,* 130 N.H. 466, 543 A.2d 407 (1988); *Downtowner, Inc. v. Acrometal Products, Inc.,* 347 N.W.2d 118, 121–25 (N.D.1984); *Flaugher v. Cone Automatic Mach. Co.,* 30 Ohio St.3d 60, 507 N.E.2d 331, 336–37 (1987); *Fish v. Amsted Indus., Inc.,* 126 Wis.2d 293, 376 N.W.2d 820, 823–25 (1985); 15 *Fletcher's Cyclopedia Corporation* § 7123.20; Restatement (Third) of Torts: Products Liability § 12 (1998); 1 *American Law of Products Liability* §§ 7:19–7:24.

The central inquiry is this: Should a successor corporation, which under the law is rightfully allowed to seek financial gain from the accumulated goodwill and reputation of a predecessor after purchasing the predecessor's assets, simultaneously be allowed to rid itself of the burden of claims brought by persons injured by an allegedly defective product made by the defunct predecessor? In other words, will the law allow the successor to embrace the benefits with one arm while evading the burdens with the other?

I conclude the law should not allow such an obviously inequitable result, which does not comport with the sound public policies of this state with regard to corporate successor liability or product liability law. This Court long has maintained that the burdens follow the benefits in the arena of successor liability under appropriate circumstances. *Brown* 128 S.C. at 432, 123 S.E. at 99. Moreover, as the Court aptly

observed sixty-six years ago, "[t]he corporate fiction and the rules surrounding it have been of inestimable service in the affairs of business, but they must be applied in such a manner as to promote justice, not to hinder or defeat it." *Long*, 190 S.C. at 377, 3 S.E.2d at 50.

The Court has not previously had the opportunity to determine the meaning of the mere continuation exception set forth in *Brown*, 128 S.C. 428, 123 S.E. 97, in this context, and I would decline to interpret that exception as narrowly as other courts have. The general rule and mere continuation exception are sufficiently flexible to encompass successor liability in the context of a product liability action. I conclude that a successor corporation which acquires all or substantially all of the assets of a predecessor, whether through a transfer of stock or a transfer of assets for cash or the equivalent, may be held liable in a product liability claim arising from a unit previously manufactured and distributed by the predecessor when the successor is determined to be, in effect, a mere continuation of the defunct predecessor.

In determining this issue, a court should consider factors such as (1) whether the successor, taking lawful advantage of the predecessor's accumulated goodwill and reputation, held itself out to the world as a continuation of the predecessor through continued use of the predecessor's corporate identity, trade names, advertising, or other intellectual property; (2) whether the successor continued to manufacture substantially the same product line as the predecessor, recognizing that manufacturing activity by its nature involves modification of product lines and elimination of unprofitable items; (3) whether the successor retained the predecessor's managers, employees, or sales force; (4) whether the successor continued to use the predecessor's equipment, supplier, dealer, or customer lists; (5) whether the successor assumed those liabilities and obligations of the predecessor ordinarily necessary for the continuation of normal business operations of the predecessor; and (6) whether the successor's officers, directors, or shareholders are substantially the same as the predecessor's. No one factor can be dispositive in this fact-intensive analysis. Again, the overarching principle in the analysis is that a successor which stands to benefit from exploitation of the predecessor's identity and accumulated goodwill and reputa-

tion may not avoid the burden of the predecessor's product liability claims.

This approach best comports with the policies and goals of both corporate law and product liability law in South Carolina. It is well established that a successor corporation in appropriate circumstances obtains the benefits and accompanying burdens in the contract or creditor-debtor setting. The same ought to be true in a product liability action involving a corporation which is found to be a mere continuation of the predecessor.

"[S]trict liability for manufacturers exists in large part as a deterrent and a method of allocating the risk of loss among those best equipped to deal with it." *Madison v. American Home Products Corp.*, 358 S.C. 449, 454, 595 S.E.2d 493, 496 (2004). The approach I propose is consistent with the notion that manufacturers—whether they are the original manufacturer or a successor—are in the best position to protect the public from defective products by evaluating the risks and ensuring they place a reasonably safe product in the stream of commerce. Furthermore, this approach would encourage existing corporations to produce safe products because, knowing they will be unable to offer themselves for sale free of successor liability, they will have an additional incentive to manufacture safer products in order to maximize the corporation's market value if sold.

I reject as speculative and unfounded the argument that holding a successor liable in a product liability action will damage business interests or prompt rash decisions by corporations. Terex has not cited, nor have I found, any studies or evidence demonstrating that the view I propose would inhibit asset-based transactions, lead to increased piecemeal sales, or discourage large-scale transfers. Potential legal liability often is a factor every responsible corporation must consider; however, it is not the driving or primary force behind every decision. Successors contracting for an asset transfer in a free market, when they intend to continue the basic enterprise, will negotiate a price which reflects the fair market value of the transfer, taking heed of the risk of future claims. A successor also may factor in the cost of purchasing succes-

sor liability insurance. *See e.g. Savage Arms,* 18 P.3d at 56–58.

The traditional rule on successor liability "was designed for the corporate contractual world where it functions well. It protects creditors and dissenting shareholders, and facilitates determination of tax responsibilities, while promoting free alienability of business assets." *Polius v. Clark Eqpt. Co.,* 802 F.2d 75, 78 (3d Cir.1986). However, courts have come to recognize, as I would, "that the traditional rule of nonliability was developed not in response to the interests of parties to product liability actions, but rather to protect the rights of commercial creditors and dissenting shareholders following corporate acquisitions, as well as to determine successor corporation liability for tax assessments and contractual obligations of the predecessor. Strict interpretation of the traditional corporate law approach leads to a narrow application of the exceptions to non-liability, and places unwarranted emphasis on the form rather than the practical effect of a particular corporate transaction." *Ramirez,* 431 A.2d at 815–16.

I agree with the New Jersey Supreme Court that it is somewhat anomalous and rather perplexing that after the long journey from the seminal product liability case of *MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916), the drafters of the Restatement (Third) of Torts and courts rejecting successor liability in this context would frame the issue solely in terms of contract law and essentially ignore product liability law. *See Lefever v. K.P. Hovnanian Enterprises, Inc.,* 160 N.J. 307, 734 A.2d 290, 294–95 (1999). The better view, as outlined above, is that strict liability in tort may be imposed on a successor corporation in a product liability action in a manner which allows corporations to protect their interests and yet still fulfills the goals of product liability law.

## 2. EFFECT OF FEDERAL BANKRUPTCY COURT ORDER ON VIABILITY OF PRODUCT LIABILITY ACTION BASED ON STATE LAW

I agree with the majority that a plaintiff may maintain a product liability claim in South Carolina under a successor liability theory against a defendant which purchased only the assets of a voluntarily bankrupt selling company in a transac-

tion approved by the federal bankruptcy court. As explained in Question 1, I part with the majority in its exclusive reliance on *Brown*, 128 S.C. 428, 123 S.E. 97. I would apply the analysis previously set forth to determine whether the successor is a mere continuation of the predecessor. Accordingly, I would answer "yes" to Question 2 and analyze it in the following manner.

Terex argues it cannot be held liable as a successor because it purchased the assets free and clear of all claims pursuant to the terms of a bankruptcy court order; the Full Faith and Credit Clause requires this Court give binding effect to the bankruptcy court order; and the Bankruptcy Code preempts a successor liability theory of recovery when the bankruptcy court approves the sale of assets. I disagree.

## A. LANGUAGE OF BANKRUPTCY COURT ORDER

The 1991 purchase agreement between Mark and Terex stated "[n]othing herein shall be construed as the assumption of or by Buyer of any liabilities of the Seller, including, without limitation, any liability for products manufactured or sold by Seller." The bankruptcy court order approving the sale provided that "[Mark] is authorized to sell the assets of its estate to Terex ... on terms and conditions consistent with the Purchase Agreement and related attachments." The order stated that "the sale of the assets authorized hereby is free and clear of any and all liens and encumbrances *as may presently attach to the assets* ... (emphasis added)." The order further stated that the "sale of assets shall be free and clear of all liens and encumbrances of those creditors who had *adequate notice* of the Debtor's motion and *opportunity to appear and object at the time of the hearing on the Motion* (emphasis added)."

Terex asserts the terms of the order and purchase agreement insulate it from product liability claims as the successor of Mark. Simmons asserts the bankruptcy court order does not bar liability in this instance because—while The purchase agreement expressly mentioned product liability claims that may arise in the future—the order did not. Citing the above-emphasized language, Simmons contends his product liability claim is not barred because it did not exist until he was

injured in the 1999 accident; thus, it does not fall within the ambit of the order.

I would decline to resolve this question by attempting to parse the language of the order and purchase agreement as Simmons suggests. Instead, I would find that the order apparently incorporated the terms and conditions of the purchase agreement, which included the provision on future product liability claims purporting to insulate Terex from successor liability. The real question which must be answered is whether such a provision precludes a state law-based product liability action against Terex.

## B. FULL FAITH AND CREDIT CLAUSE

Terex argues this Court is required by the Full Faith and Credit Clause to enforce the bankruptcy court order in its entirety, including the disclaimer of liability for future product liability claims. I disagree.

The Full Faith and Credit Clause,[6] as well as the Full Faith and Credit Statute,[7] are inapplicable. Simmons, who was injured in 1999, did not have an existing claim and never received notice of the bankruptcy proceeding before the sale of assets in 1991. A court of this state is not required by the Full Faith and Credit Clause to enforce a foreign state judgment or order when it is rendered by a court lacking personal or subject matter jurisdiction, or when it is rendered in violation of due process of law without notice and a fair opportunity to be heard. *See Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 242, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998) (Full Faith and Credit Clause and its implementing statute make the record of a judgment, rendered after due notice in one state, conclusive evidence in the courts of another State, or of the United States, of the matter adjudged) (Scalia, J., concurring); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) ("A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere.... Due process requires that the defendant

6. U.S. Const. art. IV, § 1.

7. 28 U.S.C.A. § 1738 (West 1994).

be given adequate notice of the suit ... and be subject to the personal jurisdiction of the court."); *Barnes v. Buck*, 464 Pa. 357, 346 A.2d 778, 782 (1975) ("the full and faith and credit clause does not require that we give recognition to a judgment rendered without jurisdiction or without notice and a fair opportunity to be heard; indeed, due process of law mandates that we not do so."); *Pector v. Meltzer*, 298 N.J.Super. 414, 689 A.2d 814, 816 (1997) (stating the "well-established principle that a court of this State, when asked to enforce a foreign state judgment, must deny full faith and credit if the rendering court lacked in personam jurisdiction, subject matter jurisdiction, *or failed to provide adequate notice and an opportunity to be heard* ") (emphasis in original).

## C. PREEMPTION

Terex argues the U.S. Bankruptcy Code, specifically 11 U.S.C.A. 363(f) (West 2004),[8] preempts any attempt under state law to impose successor liability for product liability claims. I disagree.

"The Supremacy Clause provides that '[t]his Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.' It is basic to this constitutional command that all conflicting state provisions be without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981) (quoting U.S. Const. art. VI, cl. 2). It is a "familiar and well-established principle that the Supremacy Clause ... invalidates state laws that interfere

---

**8.** Section 363(f) states:

The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits the sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

with or are contrary to federal laws." *Hillsborough County v. Automated Medical Labs., Inc.,* 471 U.S. 707, 712, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985) (internal quotes omitted). However, "[c]onsideration under the Supremacy Clause starts with the basic assumption that Congress did not intend to displace state law." *Maryland,* 451 U.S. at 746, 101 S.Ct. 2114.

In the interest of avoiding unintended encroachment on the authority of the states, a court interpreting a federal statute pertaining to a subject traditionally governed by state law will be reluctant to find preemption. Thus, preemption will not lie unless it is the clear and manifest purpose of Congress. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). Evidence of Congress' intent to preempt state law is sought in the text and structure of the statute at issue. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 95, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Congress did not intend the Bankruptcy Code to preempt all state laws. *Midlantic Natl. Bank v. N.J. Dept. of Environ. Protection,* 474 U.S. 494, 506–07, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986) (holding that bankruptcy trustee may not abandon environmentally contaminated property in contravention of state law that is reasonably designed to protect public health or safety).

Federal law may preempt state law in three ways. First, Congress may expressly define the extent to which it preempts state law. Second, Congress may occupy a field of regulation, impliedly preempting state law. Third, a state law may be preempted to the extent it conflicts with federal law. *Michigan Canners Freezers Assn., Inc. v. Agricultural Mktg. Bargaining Bd.,* 467 U.S. 461, 469, 104 S.Ct. 2518, 81 L.Ed.2d 399 (1984); *Professional Samplers, Inc. v. S.C. Empl. Sec. Commn.,* 334 S.C. 392, 397, 513 S.E.2d 374, 377 (Ct.App.1999). Such a conflict arises when either compliance with both laws is impossible or when the state law frustrates the federal purpose and creates an obstacle to the fulfillment of federal objectives. *Michigan Canners Freezers,* 467 U.S. at 469, 104 S.Ct. 2518.

I conclude 363(f), which establishes the bankruptcy trustee's power to sell assets of the estate, does not preempt a state law which adjudicates a successor corporation's liability in a product liability claim. Section 363(f) does not expressly preempt

such a state law, and the Bankruptcy Code does not so occupy the field of product liability that such a state law is impliedly preempted. Such a state law does not conflict with 363(f) because compliance with both laws is possible and the state law does not frustrate or create an obstacle to federal bankruptcy laws. State successor liability law may co-exist with federal bankruptcy law because state law will not prevent asset sales or affect the trustee's authority to conduct such sales, but merely may subject the purchaser to successor liability. As explained in Question 1, a purchaser may consider any potential future liability in negotiating the sale of assets. *See Wilkerson v. C.O. Porter Mach. Co.*, 237 N.J.Super. 282, 567 A.2d 598 (1989) (preemption would not preclude applying product line theory of successor liability to asset purchaser in bankruptcy sale; application of successor liability to product liability claim would not conflict with bankruptcy orders involving sale of assets).

At least two courts have held liability for a product liability claim may not be imposed on a successor who purchased assets at a court-approved bankruptcy sale, although the decisions were not based on a preemption analysis. *See Nelson v. Tiffany Indus. Inc.*, 778 F.2d 533, 538 (9th Cir.1985) (applying California law to hold the product line exception does not apply when there is a good-faith dissolution in bankruptcy which is not intended to avoid future tort claims against the predecessor; under such circumstances, the successor corporation has not caused the destruction of the plaintiff's remedies); *In re White Motor Credit Corp.*, 75 B.R. 944 (Bankr.N.D.Ohio 1987) (imposition of liability on successor corporation for preconfirmation product liability claims against predecessor was precluded by order of sale approving parties' agreement that successor would not assume any liabilities of predecessor for personal injury or property damage because of alleged negligence or breach of warranty or under any other theory of product liability).

I find more persuasive the views expressed by several courts which have held that a successor may be held strictly liable in a state law product liability claim despite a bankruptcy court order or purchase agreement purporting to discharge such liability. *See In re Savage Indus., Inc.*, 43 F.3d 714, 719–23 (1st Cir.1994) (parties to an all-asset transfer in Chapter 11

bankruptcy, where purchase agreement purported to disclaim successor's liability for product liability claims not pending at time of sale, are not entitled to rely on protective jurisdiction of bankruptcy court to enjoin prosecution of a state-law based successor product-line liability action; court emphasized the importance of notice and procedural due process, which permeate the Bankruptcy Code); *Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161–64 (7th Cir.1994) (bankruptcy court did not have power to enjoin state law product liability claim under successor doctrine despite language in order purporting to do so; court suggested that 363(f) may not be used to extinguish successor product-line claims); *Mooney Aircraft Corp. v. Foster*, 730 F.2d 367, 373–75 (5th Cir.1984) (bankruptcy court lacked jurisdiction to enjoin plaintiff's product liability suit against successor which purchased assets used to make allegedly defective airplane because plaintiff did not have a claim at time of bankruptcy sale and so there was no property right to be deprived or claim to be divested); *Schweitzer v. Consolidated Rail Corp.*, 758 F.2d 936, 941–44 (3d Cir.1985) (discharge in bankruptcy does not discharge a product liability claim when claimant does not have a sustainable cause of action at the time of the discharge); *In re Schwinn Bicycle Co.*, 210 B.R. 747 (Bankr.N.D.Ill.1997) (bankruptcy court order approving sale of assets, which indicated successor-purchaser would not be regarded as successor in interest, could not bind plaintiff subsequently injured while using exercise equipment manufactured by predecessor; even assuming order was intended to have such an effect, applying it to accident victim whose product liability claim arose after sale of assets, and who had received no notice or opportunity to participate in bankruptcy process, would violate due process and bankruptcy notice requirements); *Lefever v. K.P. Hovnanian Enterprises, Inc.*, 160 N.J. 307, 734 A.2d 290, 295–301 (1999) (federal bankruptcy law did not preclude forklift operator's product liability claim against successor who purchased assets at bankruptcy sale because bankruptcy proceeding did not deal with his claim; court noted that successors who purchase assets at bankruptcy sale may be held liable in other contexts, including liability for environmental contamination, delinquent pension fund contributions, and age discrimination claims).

In sum, I conclude Simmons may maintain a state law-based product liability claim under a successor liability theory against a successor corporation which purchased the predecessor's assets in a voluntary sale approved by the federal bankruptcy court.

3. AVAILABILITY OF OTHER POTENTIAL DEFENDANTS

Terex urges we find it may not be held liable as a successor because Simmons may look to seller, BPS Equipment, for recovery. Terex asserts that when other entities may answer in damages to Simmons under a strict liability or negligence theory, it is unnecessary to hold a successor corporation liable in a product liability action.

I agree with the majority this argument is without merit and conclude the answer to Question 3 is "yes," a plaintiff may maintain a product liability claim under a successor liability theory against a defendant when there are one or more other viable product liability defendants. The status and availability of a seller or other potential defendants are irrelevant in determining the issue of a successor corporation's liability in a product liability action. To hold otherwise would be to grant a fortuitous windfall to a successor, if a plaintiff should prevail, while unfairly and improperly placing the entire burden of responding to the plaintiff's damages on remaining defendants.

## CONCLUSION

In Question 1, I disagree with the majority's decision to rely exclusively on *Brown,* 128 S.C. 428, 123 S.E. 97. A successor corporation which purchases the assets of a predecessor may be held liable in a product liability action for an allegedly defective product manufactured by the predecessor when an analysis of the facts and circumstances reveals it is appropriate to hold the successor liable as a mere continuation of the predecessor. In Question 2, I agree with the majority a plaintiff may maintain a product liability claim under a successor liability theory grounded in state law against a successor corporation which purchased the predecessor's assets in a voluntary sale approved by the federal bankruptcy court. I

disagree with the majority's decision to rely exclusively on *Brown* in determining the issue of successor liability. In Question 3, I agree with the majority that the fact there may be one or more viable product liability defendants who may be liable to Simmons as a seller of an allegedly defective product is irrelevant in analyzing the issue of successor liability.