714 S.E.2d 322

**NATIONWIDE MUTUAL INSURANCE COMPANY, INC., and Gilliam Construction Company, Inc., Appellants,**

v.

**EAGLE WINDOWS & DOORS, INC., American Architectural Products Corporation, Window and Door Concepts, Inc., Charles Goad, Hobbit Plastering, Inc., Phillip L. Bender, Upstate Waterproofing Inc., Dale Coleman and Gary Churchill, Defendants,**

**Of which Eagle Windows & Doors, Inc. is, Respondent.**

No. 27030.

Supreme Court of South Carolina.

Heard March 15, 2011.

Decided Aug. 22, 2011.

**56**

Jason Michael Imhoff, of The Ward Law Firm, of Spartanburg, for Appellants.

Ashley Dantzler Wright, of Warren & Sinkler, of Charleston, for Respondent.

Justice PLEICONES.

This is an appeal from an order dismissing this contribution suit finding it was barred by a prior bankruptcy order. We reverse.

## FACTS

In May 2002, respondent's predecessor purchased the assets of Eagle & Taylor Company, d/b/a Eagle Windows & Doors, Inc. (Eagle I), from Eagle I's bankruptcy estate.[1] In 2000, homeowners constructed a residence using defective windows manufactured by Eagle I. In 2006, homeowners settled their construction claims against the appellant contractor.

The contractor and its insurer (appellants) then brought this contribution[2] suit against respondent as successor to Eagle I. The circuit court granted respondent's motion to dismiss, holding (1) dismissal was required under Rule 12(b)(6) because the bankruptcy order expressly precluded any state law successor liability actions since the sale was "free and clear" under 11 U.S.C. § 363(f) of the Bankruptcy Code;[3] and (2)

---

1. The chain through which respondent came to own Eagle I is irrelevant to the issues raised on appeal.

2. See Uniform Contribution Among Tortfeasors Act, S.C.Code Ann. §§ 15–38–10 et seq. (2005 and Supp.2010).

3. This section reads:

that dismissal was proper under Rule 12(b)(1), SCRCP, because the bankruptcy court in Ohio which issued the Eagle I order retained jurisdiction over any claims against respondent for successor liability

### I. *Free and Clear Sale*

■ The circuit court held that, because the Ohio bankruptcy order allowed the sale of Eagle I's assets free and clear under § 363(f), this suit should be dismissed. We disagree.

The Eagle I bankruptcy order's "free and clear" provisions are:

I. The sale, conveyance and assignment of the Assets under the Final Agreement, except as otherwise specified in the Final Agreement, are free and clear of all liens, claims, encumbrances, and interests, including without limitation, mortgages, deeds of trust, security interests, conditional sale or title retention agreements, pledges, liens, judgments, demands, encumbrances, easements, restrictions, constructive or resulting trusts, or charges of any kind, including but not limited to any restriction on the use, voting, transfer, receipt of income, or other exercise of any attribute of ownership and all debts arising in any way in connection with any acts of the Debtors, claims (as that term is defined in Bankruptcy Code § 101(5)), obligations, demands, guarantees, options, rights, contractual commitments, claims related to the design, manufacture, sale or distribution of products sold by the Debtors or their predecessors, and claims related to pollution or other adverse effects on human health or the environment, including but not limited to the release in connection with any of the Debtors' (or

---

(f) The trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if—

(1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

their predecessors') operations or any of the Assets or a hazardous substance, pollutant, contaminant, or other substance regulated under any local, state, or federal law, ordinance, or regulation, and claims related to the Debtors' (or their predecessors') failure to comply with any such law, statute, regulation, or ordinance restrictions, interests in matters of any kind or nature, arising before closing of the sale of the Assets (the **"Effective Time,"** as further defined in the Final Agreement), and whether imposed by an agreement, understanding, law, equity, or otherwise (collectively, **"Interests"**), with all such Interests released, terminated, and discharged as to the Assets and EWD Acquisition and to attach and be satisfied from the proceeds for the sale of the Assets authorized by this Order.

. . . .

K. EWD Acquisition [respondent's predecessor] is only a purchaser of the Assets and is not a successor in interest to Eagle or any other Debtor, nor does EWD Acquisition's purchase of the Assets reflect a substantial continuity of the operations of the Debtors' businesses. Accordingly, except as otherwise specifically and expressly provided in the Final Agreement, transfer of the Assets to EWD Acquisition and assumption and assignment to EWD Acquisition of the Assigned Contracts, will not subject EWD Acquisition to any liability whatsoever with respect to the operation of Eagle's business before the Effective Time based, entirely or partly, directly or indirectly, on any theory of law or equity including without limitation any theory of antitrust or successor or transferee liability.

(Emphasis in original).

Paragraph I of the Eagle I bankruptcy order first discharged respondent from all claims "arising before the sale of the Assets" directing that any such claims "attach" to the sales proceeds. This paragraph refers to an action *in rem* against the proceeds paid to the debtor, while a post-sale tort action against the successor entity is not an action against the sale proceeds received by the debtor, but rather an *in personam* action against the successor itself. See *In re Grumman Olson Indus., Inc.*, 445 B.R. 243 (Bkrtcy.S.D.N.Y.2011). Nothing in Paragraph I bars this suit.

In *Grumman,* the bankruptcy court explained that under a § 363(f) "free and clear" sale, the purchaser of a bankrupt's assets need not fear that a creditor of the bankruptcy estate can enforce its claim against those assets because the effect of the free and clear sale is to limit that creditor to *in rem* relief against the sale proceeds. Whether a party is limited to proceeding *in rem* against these proceeds, or is one whose claim lies against the purchaser, is determined first by 11 U.S.C. § 101(5) of the Bankruptcy Code. If the creditor does not have a § 101(5) claim, then his right to proceed against the purchaser is determined by state law.

 The test to determine the type of claim a party has is:

[A]n individual has a § 101(5) claim [which is limited by the free and clear sale to *in rem* against the sale proceeds held by the Debtor] against a debtor manufacturer if (i) events occurring before confirmation create a relationship, such as contact, exposure, impact, or privity, between the claimant and the debtor's product; and (ii) the basis for liability is the debtor's prepetition conduct in designing, manufacturing and selling the allegedly defective or dangerous product. The debtor's prepetition conduct gives rise to a claim to be administered in a [bankruptcy] case only if there is a relationship established before

confirmation between an identifiable claimant or group of claimants and that prepetition conduct.

*Epstein v. Official Committee of Unsecured Creditors (In re Piper Aircraft Corp.),* 58 F.3d 1573 (11th Cir.1995). (*Piper* ).

Here, appellants, standing in the shoes of the homeowners, are not barred by § 101(5). Specifically, the homeowners dealt with the contractor, not the window manufacturer, and there was no preexisting relationship between the manufacturer and the homeowner giving rise to a claim within the meaning of the asset sale order. *Piper, supra; see also* Kuney, *Misinterpreting Bankruptcy Code Section 363(f) and Undermining the Chapter 11 Process,* 76 Am. Bankr. L.J. 235 (Spring 2002). *Compare e.g. In re Leckie Smokeless Coal Co.,* 99 F.3d 573 (4th Cir.1996) (existing creditors of bankrupt company with § 101(5) status unsuccessfully contested § 363 "free and clear" sale). Paragraph I does not bar this suit.

The Eagle I bankruptcy order provides in Paragraph K that respondent "is only a purchaser of the Assets and is not a successor in interest" and thus is not subject "to any liability whatsoever with respect to the operation of [Eagle I's] business ... based ... on any theory of law or equity including ... successor ... liability." While this sentence facially appears to support the circuit court's decision, it does not. Having established that they are not § 101(5) claimants, whether appellants will be able to hold respondent liable under a successor liability theory is a question of state law. See *Simmons v. Mark Lift Indust., Inc.*, 366 S.C. 308, 622 S.E.2d 213 (2005).

*Simmons* decided three certified questions:

1) May a South Carolina plaintiff pursue a products liability action under a successor liability theory against a defendant which purchased the predecessor's assets out of a bankruptcy sale?

2) What is the test for determining successor liability of a company which purchased the assets of an unrelated company?

3) May the South Carolina plaintiff maintain such a suit where there are one or more other viable defendants?

The *Simmons* majority answered question 2 first, holding that the test for successor liability is that found in *Brown v. American Ry. Express Co.*, 128 S.C. 428, 123 S.E. 97 (1924). *Simmons* held that if the plaintiff could establish successor liability under one of the *Brown* tests, then it could maintain a suit against the successor corporation.

*Brown* establishes four tests for determining whether a successor corporation may be liable for the debts of its predecessor:

(1) there was an agreement to assume these debts; or

(2) the circumstances surrounding the transaction support a finding of consolidation or merger of the two corporations; or

(3) the successor is a mere continuation of the predecessor; or

(4) the transaction was fraudulent, that is, to wrongfully defeat the predecessor's creditors' claims.

Here, Paragraph K provides only that respondent is not liable under a successor liability theory for the conduct of Eagle I, but does not absolve respondent of liability for its own conduct. See *Grumman, supra.* If appellants can establish that respondent's conduct meets one or more of the *Brown* tests, then respondent may be liable to them. *Simmons, supra.*

We reverse the finding that the Ohio bankruptcy order's "free and clear" sale of Eagle I's assets deprived the appellants of the ability to bring this state court action.

## II. *Reservation of Jurisdiction*

█ The circuit court also dismissed this action, finding that the Ohio bankruptcy order had expressly retained jurisdiction over all successor liability claims related to Eagle I in this paragraph:

22. The Court retains jurisdiction to enforce and implement the terms and provisions of the Final Agreement, all amendments to it, any waivers and consents under it, and of each of the agreements executed in connection with it in all respects, including but not limited to retaining jurisdiction to resolve any disputes arising under or related to the Final Agreement (except as provided otherwise in the Final Agreement) and interpret, implement, and enforce the provisions of this Order.

Appellants' claim does not arise under either the Agreement or the order, nor does their claim arise under § 101(5) or relate to Eagle I. Rather, it is predicated upon respondent's post-sale conduct which, appellants contend, exposes it to successor liability under South Carolina state law. See *Simmons, supra.* The circuit court erred in dismissing this suit under Paragraph 22.

## CONCLUSION

The order dismissing appellants' claim under Rule 12(b) is **REVERSED.**

TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.