**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

Nationwide Mutual Insurance Company and Gilliam Construction Company, Inc., Respondents,

v.

Eagle Window & Door, Inc., Appellant.

Appellate Case No. 2014-001151

———————

Appeal From Spartanburg County
J. Mark Hayes, II, Circuit Court Judge

———————

Unpublished Opinion No. 2016-UP-168
Heard November 12, 2015 – Filed April 6, 2016

———————

**AFFIRMED AS MODIFIED**

———————

G. Dana Sinkler, Gibbs & Holmes, of Wadmalaw Island, for Appellant

Jason Michael Imhoff and Carl Reed Teague, The Ward Law Firm, PA, both of Spartanburg, for Respondents.

———————

**FEW, C.J.:** Eagle Window and Door, Inc. (Eagle) appeals the circuit court's order finding Eagle is a "mere continuation" of Eagle & Taylor Company d/b/a Eagle Window and Door, Inc. (EWD) and therefore liable to Nationwide Mutual

Insurance Company (Nationwide) for contribution under a theory of successor liability. We affirm as modified.

## I. Facts and Procedural History

Gilliam Construction Company, Inc. (Gilliam) contracted with Renaul and Karen Abel for the construction of their home in Spartanburg County in 1999 and 2000. After the project was completed, the Abels discovered certain defects and deficiencies in the home—including leaking windows—and invoked the arbitration clause in their contract with Gilliam. Between the time the windows were made by EWD and the discovery of the defects, EWD's parent company, American Architectural Products Corporation (AAPC) filed for bankruptcy. The assets of EWD were sold to EWD Acquisition, Co., a corporation wholly owned by Linsalata Capital Partners Fund IV, L.P., (Linsalata) and created solely to buy the assets. The consideration paid was $64,750,000. EWD Acquisition, Co. thereafter changed its name to Eagle Window and Door, Inc. (Eagle).[1] Eagle was invited to participate in the arbitration under the Abel/Gilliam construction contract, but declined. The Abels' claim was settled by Nationwide and its insured Gilliam[2] for $235,000.[3]

Nationwide then instituted this contribution action against various defendants, including Eagle, under the Uniform Contribution Among Tortfeasors Act (the Act)[4] to recover the settlement costs. Nationwide argued Eagle was a "mere continuation" of EWD rendering Eagle liable for contribution to the settlement. Nationwide presented affidavits, requests to admit, and responses to interrogatories

---

[1] *Nationwide Mut. Ins. Co. v. Eagle Windows & Doors, Inc.*, 394 S.C. 54, 714 S.E.2d 322 (2011).

[2] Because Gilliam paid a portion of the settlement amount—$10,000 in cash and waived $25,000 owed—both it and Nationwide are plaintiffs in this contribution action. However, for the sake of simplicity, we will generally refer to Nationwide as the party seeking contribution.

[3] The settlement agreement between the parties alludes only to payment of $210,000 as consideration for the Abels' release of their claims. However, Nationwide presented evidence Gilliam also waived approximately $25,000 owed to it by the Abels under the contract as additional consideration for the settlement.

[4] S.C. Code Ann. §§ 15-38-10 to -70 (2005 & Supp. 2015).

regarding the corporate structure of EWD, AAPC, Eagle, and Linsalata—the commonality of officers, directors, and shareholders being central to the issue of successor liability.

The officers of EWD and Eagle are listed below.

| EWD Officers | | Eagle Officers | |
|---|---|---|---|
| Chairman | | Chairman | Stephen Perry (Sr. V.P. & CFO of Linsalata) |
| President | David Beeken | President | David Beeken |
| Executive V.P. | Charles Daoud | Executive V.P. | Charles Daoud |
| V.P. of Finance | Steven Stoppelmoor | V.P. of Finance | Steven Stoppelmoor |
| V.P. of Engineering | Ronald Vander Weerd | V.P. of Engineering | Ronald Vander Weerd |
| Treas. & Asst. Scty. | | Treas. & Asst. Scty. | Gregory L. Taber |
| Secretary | Jonathan Schoenike | Secretary | Ronald H. Neill |
| Controller | Andrew Wickman | Controller | Andrew Wickman |

With respect to directors and shareholders, EWD was a wholly-owned subsidiary of AAPC. At the time of bankruptcy, AAPC was owned primarily by George Hofmeister who controlled approximately 73% of the shares. AAPC had two directors, Hofmeister and Joseph Dominijanni. Neither Hofmeister nor Dominijanni owns any interest in Linsalata or Eagle.

Stephen Perry, Vice President and Chief Financial Officer of Linsalata, named himself and two additional persons as directors for Eagle—Frank Linsalata and Ronald Neill, an attorney for Linsalata. David Beeken was later added as a director. The record demonstrates the carry-over officers from EWD to Eagle were given a minor ownership interest in Eagle, as delineated in the chart below.

**Eagle Ownership**

| | |
|---|---|
| Linsalata | 87.9% |
| Mass Mutual Life Ins. Co. | 6.3% |
| David Beeken | 1.7% |
| Charles A. Doud | 1.6% |

| Ronald Vander Weerd | .2% |
| Andrew Wickman | >.00005% |

With respect to the operation of the companies, the parties do not dispute that Eagle remained in the same facilities, continued manufacturing windows and doors, retained the same employees, and essentially held itself out as an ongoing business.

The circuit court concluded Eagle was a mere continuation of EWD stating, "a review of Eagle's own website establishes that Eagle is a mere continuation of its predecessor corporation . . . . It is clear from that marketing material that Eagle considers itself a separate and autonomous entity which has designed and manufactured windows in the same city for a century and a half, despite its numerous parent companies." The circuit court stated that even if mere continuation required commonality of officers, directors, and shareholders, Nationwide had proven "that officers, directors, and stockholders remained in the successor corporation from the predecessor corporation."

With respect to its right to contribution, Nationwide presented the testimony of William R. Still, a forensic engineer, and Cindy Thomas, a Nationwide representative. Still testified the Abels' windows were defective and caused damage to their home totaling approximately $211,000. Cindy Thomas testified two other defendants, Window and Door Concepts, Inc., the window seller, and Hobbit Plastering, the stucco applicator, settled the contribution claims against them for $24,000 and $41,000, respectively.

Nationwide moved, over Eagle's objection, to dismiss the other remaining defendants, and the circuit court granted the motion.

The circuit court determined Eagle was the party responsible for the Abels' damages and ordered Eagle to pay $117,500, half of the $235,000 settlement, as its pro rata share under the Act. The circuit court further determined that the damages were liquidated and awarded Nationwide prejudgment interest amounting to $70,258.42.

## II.    Issues on Appeal[5]

---

[5] We have consolidated some of the issues listed by Eagle.

1.	Did the circuit court err in ruling Eagle is liable to Nationwide under a theory of successor liability?

2.	Did the circuit court err in finding Nationwide did not fail to plead or prove a design or manufacturing defect in the windows?

3.	Did the circuit court err in finding Nationwide was entitled to recover $25,000 for the amount it contends Gilliam "waived" as payment under its contract with the Abels?

4.	Did the circuit court err in permitting Nationwide to unilaterally release Eagle's codefendants?

5.	Did the circuit court err in determining the amount Eagle should pay in contribution?

6.	Did the circuit court err in allowing prejudgment interest?

## III.	Standard of Review

"In an action at law tried without a jury, the trial judge's findings have the force and effect of a jury verdict upon the issues and are conclusive on appeal when supported by competent evidence." *Mathis v. Brown & Brown of S.C., Inc.*, 389 S.C. 299, 307, 698 S.E.2d 773, 777 (2010). "Accordingly, [an appellate court's] scope of review is limited to determining whether the findings are supported by competent evidence and correcting errors of law." *Id.*

"In an action in equity, tried by the judge alone, without a reference, the appellate court has jurisdiction to find facts in accordance with its view of the preponderance of the evidence." *Mazloom v. Mazloom*, 382 S.C. 307, 316, 675 S.E.2d 746, 751 (Ct. App. 2009). A contribution action is enforced in equity and reviewed under an equitable standard. *RIM Assocs.' v. Blackwell*, 359 S.C. 170, 179, 597 S.E.2d 152, 157 (Ct. App. 2004).

This appeal requires us to use a split standard of review in that the determination of whether Eagle is a mere continuation is an action at law, but Nationwide's overall entitlement to contribution is a matter arising in equity.

## IV.	Successor Liability

"[I]n the absence of a statute, a successor or purchasing company ordinarily is not liable for the debts of a predecessor or selling company **unless** (1) there was an agreement to assume such debts, (2) the circumstances surrounding the transaction warrant[s] a finding of a consolidation or merger of the two corporations, (3) the successor company was a mere continuation of the predecessor, or (4) the transaction was entered into fraudulently for the purpose of wrongfully defeating creditors' claims." *Simmons v. Mark Lift Indus., Inc.*, 366 S.C. 308, 312, 622 S.E.2d 213, 215 (2005) (footnote omitted) (citing *Brown v. Am. Ry. Express Co.*, 128 S.C. 428, 123 S.E. 97 (1924)). "[T]he majority of courts interpreting the mere continuation exception have found it applicable only when there is commonality of ownership, *i.e.,* the predecessor and successor corporations have substantially the same officers, directors, or shareholders." *Simmons*, 366 S.C. at 312 n.1, 622 S.E.2d at 215 n.1 (emphasis omitted). In *Nationwide*, the supreme court reversed the dismissal of Nationwide's contribution claim, stating, "If [Nationwide] can establish that [Eagle]'s conduct meets one or more of the *Brown* tests, then [Eagle] may be liable to [Nationwide]." *Nationwide*, 394 S.C. at 61, 714 S.E.2d at 326.

We find the evidence supports the circuit court's finding that Eagle is liable to Nationwide because Eagle was a mere continuation of EWD.

Eagle continued manufacturing windows and doors in the same location with the same name and capitalizing on that continuity in its website marketing. Of the eight officers appointed to Eagle post sale, five were officers of pre sale Eagle. Among those five officers were the President and CEO, Executive Vice President, Vice President of Finance, Vice President of Engineering, and Controller.

Eagle's own website demonstrates Eagle is merely a continuation of its former self. Eagle accepted and benefited from the goodwill, name recognition, and history of the Eagle brand. Further, Eagle continued to occupy the same space and manufacture the same products with the same employees. It marketed, manufactured, and continued to sell the same products under the same company name. This evidence supports the circuit court's factual findings.

Eagle also argues the circuit court erred in examining Eagle as the successor corporation when Linsalata—Eagle's parent company—was the purchaser of EWD's assets. We disagree. The actual purchaser of EWD's assets was EWD Acquisition, Co., which eventually became Eagle. Therefore, the circuit court appropriately focused its examination on Eagle, not Linsalata.

## V. Contribution—Failure to Plead Defect

Eagle argues Nationwide was not entitled to any recovery because it failed to plead or prove a design or manufacturing defect in the windows. Eagle is correct that Nationwide's complaint does not allege a specific window defect but alleges only that "Plaintiffs and Defendants have a common liability to the Plaintiffs in the underlying action." However, we find the issue was tried by the circuit court with the consent of all parties. *See* Rule 15(b), SCRCP ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues."). Therefore, the lack of any specific allegation in the complaint does not defeat Nationwide's right of recovery. Moreover, Eagle does not mention or argue this issue in its brief outside of listing it in the Statement of Issues on Appeal. Therefore, we find this issue has been abandoned. *See Wright v. Craft*, 372 S.C. 1, 20, 640 S.E.2d 486, 497 (Ct. App. 2006) ("An issue raised on appeal but not argued in the brief is deemed abandoned and will not be considered by the appellate court.").

## VI. Contribution—$25,000 Waiver by Gilliam

Terri Gilliam testified that as part of Gilliam's settlement with the Abels, Gilliam waived $25,000 owed for construction work on the Abels' home. The circuit court considered this waiver as though it were money paid by Gilliam to the Abels in assessing the amount subject to contribution in this case. Eagle alleges this was error because the Settlement Agreement between the parties did not mention the waiver of the $25,000 as consideration for the settlement. We disagree.

Nationwide introduced a letter in which Renaul Abel admitted that amount was owed. The contribution complaint mentions this waiver as part of the settlement, and Terri Gilliam testified to that as well. Thus, the evidence supports the circuit court's decision to include this waiver in the overall settlement amount, and we affirm on this issue.

## VII. Contribution—Unilateral Release of Codefendants

"[A] plaintiff has the sole right to determine which co-tortfeasor(s) she will sue." *Chester v. S.C. Dep't of Pub. Safety*, 388 S.C. 343, 345-46, 698 S.E.2d 559, 560 (2010). "A ruling that a [] defendant can compel a plaintiff to join other alleged

tortfeasors as defendants in that suit would overturn this firmly entrenched common law principle. Moreover, a . . . ruling that where these defendants cannot be joined because they have already settled with the plaintiff, the action must be dismissed, would thwart our strong public policy favoring the settlement of disputes." *Chester*, 388 S.C. at 346, 698 S.E.2d at 560.

Nationwide had the right to release any remaining codefendants from the case, and we affirm the circuit court's ruling permitting them to do so.

## VIII. Contribution—Pro Rata Share

Section 15-38-20(A) of the South Carolina Code (2005) provides "where two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them." Section 15-38-30 of the South Carolina Code (2005) sets forth how the court is to determine each party's share of liability in a contribution action. "In determining the pro rata shares of tortfeasors in the entire liability (1) their relative degrees of fault shall not be considered; (2) if equity requires, the collective liability of some as a group shall constitute a single share; and (3) principles of equity applicable to contribution generally shall apply." *Id.*

In this case, the circuit court split the total amount of damages for which Nationwide sought contribution evenly between Gilliam and Eagle. This was error. The settlement agreement indicates the Abels alleged "construction related defects" including "deficiencies in the framing, window installation, stucco application, windows, paving, subgrade water barrier, generator, chimney, and flooring systems." Having paid a settlement to extinguish all those claims, Nationwide then sought contribution from all defendants alleging they shared a "common liability" for the settlement.

As previously discussed, Nationwide was permitted to dismiss defendants from the contribution action. However, it was inequitable for the circuit court to ignore Nationwide's settlements with the window seller ($24,000) and stucco applicator ($41,000). Nationwide is afforded a windfall when Eagle's pro rata share is added to the two prior settlement amounts. Section 15-38-30 permits the pro rata share of multiple tortfeasors to be combined into one share if equity requires. In this case, Still's testimony indicated Eagle was primarily at fault for the leaky windows and resulting damage. Therefore, it would be reasonable and fair to combine the two defendants who settled into one share and give Gilliam and Eagle one share each,

leaving a denominator of three. By this calculation, Eagle's pro rata share in contribution should be $78,333.33.

### IX.  Contribution—Prejudgement Interest

"The law allows prejudgment interest on obligations to pay money from the time when, either by agreement of the parties or operation of law, the payment is demandable and if the sum is certain or capable of being reduced to certainty." *Smith-Hunter Constr. Co. v. Hopson*, 365 S.C. 125, 128, 616 S.E.2d 419, 421 (2005). "The fact that the sum due is disputed does not render the claim unliquidated for the purposes of an award of prejudgment interest. The proper test for determining whether prejudgment interest may be awarded is whether or not the measure of recovery, not necessarily the amount of damages, is fixed by conditions existing at the time the claim arose." *Id*. (citation omitted).

In this case, the circuit court erred in determining that the sum for which it found Eagle liable was capable of precise determination at any time prior to trial. As previously discussed, Nationwide filed its contribution action seeking $235,000. Therefore, the total damages were determined. However, it alleged a common liability for that amount between nine named tortfeasors and then proceeded to settle with two tortfeasors for amounts ranging from $24,000 to $41,000. Not until the time of trial did Nationwide dismiss the remaining defendants, reducing the pool of potentially contributing tortfeasors. At best, Eagle could have guessed it would owe one-ninth of the total claimed—or approximately $26,000. That amount was speculative and is significantly less than the amount for which the circuit court found it liable. Therefore, we find the circuit court erred in awarding prejudgment interest.

### X.  Conclusion

For the reasons explained, Nationwide is entitled to judgment against Eagle for contribution in the amount of $78,333.33, and the order of the circuit court is

**AFFIRMED AS MODIFIED.**

**MCDONALD, J., concurs.**

**KONDUROS, J., dissenting:**

I would conclude Eagle is not the mere continuation of EWD, and therefore, I respectfully dissent. In *Simmons*, a dissenting Justice Burnett argued for a more expansive view of the mere continuation exception based largely on principals of equity and fairness. *Simmons v. Mark Lift Indus., Inc.*, 366 S.C. 308, 318-19, 622 S.E.2d 213, 217-18 (2005) (Burnett, J., dissenting). He surmised a successor company should not be able to take advantage of the good will and name recognition of the prior business without also assuming its tort liability to injured consumers. *Id*. at 323-24, 622 S.E.2d at 221. The majority in *Simmons* specifically rejected this position in a footnote stating:

> Essentially, the dissent advocates an expansion of the mere continuation exception. However, as noted by the dissent, the majority of courts interpreting the mere continuation exception have found it applicable **only when there is commonality of ownership,** *i.e.,* **the predecessor and successor corporations have substantially the same officers, directors, or shareholders.** We decline to extend the exception to cases in which there is no such commonality of officers, directors and shareholders.

*Simmons*, 366 S.C. at 312 n.1, 622 S.E.2d at 215 n.1. The Supreme Court of South Carolina further maintained this position by declining to review *Walton v. Mazda of Rock Hill*, 376 S.C. 301, 307, 657 S.E.2d 67, 70 (Ct. App. 2008), *cert. denied* Oct. 8, 2008, which cited the *Simmons* footnote with approval as an essential element for finding a mere continuation. Consequently, I view commonality of ownership as a threshold question apart from other factors that may suggest a mere continuation.

On appeal, Eagle posits a complicated question regarding what exactly is required to establish commonality of ownership. In the previously cited *Simmons* footnote, the majority used the disjunctive *or* in discussing the commonality of ownership (same officers, directors, *or* shareholders) and in the following sentence used the conjunctive *and* (same officers, directors, *and* shareholders). In *Simmons*, that distinction did not matter because none of the officers, directors, or shareholders of the two entities were common. *Id.* at 312, 622 S.E.2d at 215. Likewise, in *Walton*, 376 S.C. at 307, 657 S.E.2d at 70, commonality of officers, directors, and shareholders was not an issue.

The case sub judice presents a closer question. Many of the officers of EWD also became officers in Eagle, and David Beeken was eventually named a director of Eagle. Relying on the *or* in *Simmons*, the circuit court concluded because one of the three positions—in this case officers—overlapped, the mere continuation exception was satisfied.[6] By affirming the circuit court, the majority implicitly agrees. Eagle contends this interpretation of commonality of ownership is erroneous, and I agree.

Although this issue has not been elucidated in South Carolina jurisprudence,[7] some Virginia cases offer guidance as to the importance of shareholder continuity in establishing a mere continuation. In applying Virginia's traditional view of the

---

[6] The circuit court also concluded EWD and Eagle shared officers, directors, and shareholders, but that is not borne out by the record. According to the order, the circuit court relied on Eagle's answers to interrogatories dated October 28, 2011, in reaching this conclusion. However, the interrogatories indicate the relevant officers own a minor stock interest in the new company, Eagle, and make no reference to any ownership in the old company. Additionally, Nationwide's argument at the summary judgment hearing does not suggest a continuation of shareholders as it asks the court to use the officers, directors, *or* shareholders approach. Nationwide's counsel stated, "And, then, each of these folks here [referencing the common officers] owns an interest in the successor corporation. They *become* owners." Furthermore, the Affidavit of Stephen Perry states that to the best of his knowledge, none of the officers of EWD had an ownership interest in EWD. Admittedly, the affidavit of Jonathan Schoenike states "neither David Beeken nor any of the others officers of [EWD] had control of AAPC, and if such person had any ownership interest at all, such ownership interest would not have amounted to more than between one-tenth to one one-hundredth percent of AAPC." However, this statement seems too equivocal to establish an ownership interest in AAPC or EWD, particularly in light of Nationwide's position in this litigation. Even if some overlap in ownership occurred, the record demonstrates it was not substantial.

[7] One unpublished federal district court of South Carolina case has indicated a lack of common ownership will thwart a mere continuation claim. *See Ashley II of Charleston, L.L.C. v. PCS Nitrogen, Inc.*, 2007 WL 2893372, at *10 (D.S.C. Sept. 28, 2007) ("Under South Carolina law, the mere continuation exception is applicable only where there is a commonality of ownership. DSM owned old CNC. Andlinger owned new CNC. Therefore, in this case, new CNC was not the mere continuation of old CNC because there was no commonality of ownership.").

mere continuation exception, courts have indicated identity of officers, directors, *and* stockholders is a critical point. The federal district court of Virginia has found "Among these three required factors (officers, directors, and stockholders), it appears that identity of ownership is the most important component to sustain a finding of mere continuation." *Taylor v. Atlas Safety Equip. Co.*, 808 F. Supp. 1246, 1251 (E.D. Va. 1992); *see also Kaiser Found. Health Plan of Mid-Atl. States v. Clary & Moore, P.C.*, 123 F.3d 201, 205 (4th Cir. 1997) (applying Virginia law) ("The most critical element in proving a continuation is showing the same ownership of the two companies, a 'common identity of the officers, directors, and stockholders in the selling and purchasing corporations.'"); *In re SunSport, Inc.*, 260 B.R. 88, 105 (Bankr. E.D. Va. 2000) ("The most critical element in proving a continuation is showing a common identity of the officers, directors, and stockholders in the selling and purchasing corporations. Of these, identity of ownership is the most important component to sustain a finding of mere continuation." (citation omitted)).

Some treatises have also discussed the importance of shareholder continuity. "[C]ourts taking the position that common identity of ownership is an indispensable or the most important factor have routinely held that there can be no mere continuation in the absence of continuity of shareholders, without regard to whether the predecessor dissolved after the transfer . . . ." David J. Marchitelli, Annotation, *Liability of Successor Corporation for Injury or Damage Caused by Product Issued by Predecessor, Based on Mere Continuation or Continuity of Enterprise Exceptions to Nonliability*, 13 A.L.R. 6th 355 (2006). Justice Burnett's dissent in *Simmons* also recognized the narrowness of the mere continuation exception. *See Simmons*, 366 S.C. at 317, 622 S.E.2d at 371 (Burnett, J., dissenting) (indicating the exception currently applies "only where the successor has the same stockholders as the predecessor and conducts the same business with the same management, facilities, employees, products, and trade names" (quoting Phillip I. Blumberg, *The Continuity of the Enterprise Doctrine: Corporate Successorship in the United States Law*, 10 Fla. J. Int'l L. 365, 371 (1996))).

In this case, there is no commonality of shareholders. EWD sold assets for adequate consideration in an arm's length transaction. Linsalata bought the EWD assets, and because Linsalata was not in the business of making windows and doors, it retained many of the same people at Eagle to operate the business.

> When the alleged successor receives value in the form of
> the transferor's goodwill and continues to manufacture
> products of the same sort as manufactured earlier by the

> predecessor, and thus to some extent constitutes a
> continuation of the predecessor, the general rule of
> nonliability derives primarily from the law governing
> corporations, which favors the free alienability of
> corporate assets and limits shareholders' exposures to
> liability in order to facilitate the formation and
> investment of capital.

Restatement (Third) of Torts: Prod. Liab. § 12 cmt. a (Am. Law. Inst. 1998).

In my opinion, the Simmons majority's rejection of the "continuation of operations" approach establishes South Carolina's position favoring the unfettered transfer of assets between businesses in the absence of shareholder overlap. Additionally, although the circuit court employed the "officers, directors, and shareholders" test, I believe it overemphasized Justice Burnett's "continuation of operations" approach in its analysis as evidenced by its opening statement that "a review of Eagle's own website establishes that Eagle is a mere continuation of its predecessor corporation."

Based on all of the foregoing, I would find Eagle is not a mere continuation of EWD. Because that conclusion would be dispositive of the remaining issues on appeal, I decline to address them. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S .E.2d 591, 598 (1999) (noting an appellate court need not address appellant's remaining issues when its determination of a prior issue is dispositive).