JUSTICE HEARN :
**258 This products liability case presents a narrow question: Is Petitioner Eagle Window & Door, Inc. (Eagle) subject to successor liability for defective windows manufactured by a company who later sold its assets to Eagle in a bankruptcy sale? The answer requires us to revisit our holding in *449 Simmons v. Mark Lift Industries, Inc.[1] and clarify the doctrine of successor liability in South Carolina. The court of appeals affirmed the trial court's holding that Eagle is the "mere continuation" of the entity. **259 Nationwide Mut. Ins. Co. v. Eagle Window & Door, Inc. , Op. No. 2016-UP-168, 2016 WL 1359188 (S.C. Ct. App. filed Apr. 6, 2016). We now reverse because both the trial court and court of appeals incorrectly applied the test for successor liability.
FACTUAL BACKGROUND
In 1999, homeowners Renaul and Karen Abel contracted with Gilliam Construction Company, Inc. for the construction of a house in an upscale Landrum subdivision. In constructing the house, Gilliam used windows manufactured by Eagle & Taylor Company d/b/a Eagle Window & Door, Inc. (Eagle & Taylor). Sometime after the home was completed, the Abels discovered damage from water intrusion around the windows. The Abels brought suit against Gilliam for the alleged defects and settled with Gilliam and its insurer, Nationwide Mutual, for $210,000. Nationwide and Gilliam (collectively Respondents) then initiated this contribution action seeking repayment of the settlement proceeds from several defendants, including Eagle, alleging it was liable for the obligations of Eagle & Taylor.
At the time of the manufacture and sale of the windows used in the Abel home, Eagle & Taylor was a wholly-owned subsidiary corporation of American Architectural Products Company (AAPC). Eagle & Taylor did business under two fictitious entities, neither of which was incorporated: Eagle Window & Door, Inc. and Taylor Building Products, Inc. In 2000, AAPC filed for reorganization under the U.S. Bankruptcy Code in the Northern District of Ohio. With the approval of the bankruptcy court, AAPC placed substantially all of the assets of the fictitious entity Eagle Window & Door, Inc. up for auction in 2002, where Linsalata Capital Partners Fund IV, L.P. (Linsalata)[2] was the successful bidder. To purchase and take title to the assets, Linsalata formed EWD Acquisition Co., a wholly-owned subsidiary corporation. After the assets were conveyed, EWD Acquisition Co. formally changed its name to Eagle Window & Door, Inc.-the entity against which Respondents brought their contribution claim and the Petitioner in this appeal.
**260 After the acquisition, Eagle engaged in substantially the same business of manufacturing and selling windows and doors, using the same facilities where Eagle & Taylor conducted business in Dubuque, Iowa.[3] Five officers from Eagle & Taylor joined Eagle in similar capacities after the sale, including David Beeken, who served as president of Eagle & Taylor since 2000 and had been with the company for several decades.
a. Shareholders
Prior to the asset sale, AAPC was the sole shareholder of Eagle & Taylor. After the sale was completed, Linsalata owned roughly 88% of the outstanding shares in Eagle, with the rest distributed in small amounts to Eagle officers and various investors.
b. Directors
From 1997 through May 2001, Frank Amedia was the sole director of Eagle & Taylor, with Joseph Dominijanni replacing him as sole director until the company's liquidation in 2002.[4] At the time of the asset purchase, Linsalata's Senior Vice President, Stephen Perry, was the sole director of Eagle (then known as EWD Acquisition Co.). After the transaction was completed and the corporate name changed to Eagle Window & Door, Inc., Perry issued a resolution adding Frank Linsalata and Ronald Neill as additional directors. At some point after May 2002, David Beeken was added as a director of Eagle.
*450 c. Officers
Out of Eagle & Taylor's eight officers, five assumed similar roles as officers with Eagle after the asset sale. The remaining three officer positions were filled by Linsalata appointees.
**261 Contribution Suit
In 2007, Respondents initiated a contribution suit against Eagle seeking to recover for amounts paid in the settlement with the Abels. Eagle defended against the claim on the ground that no successor liability flowed from Eagle & Taylor, the entity responsible for the manufacture and sale of the defective windows.[5] Respondents argued Eagle should be treated as a "mere continuation" of Eagle & Taylor because it retained a substantially similar name, produced the same products in the same facility, and benefitted from the brand's history by holding itself out as the successor entity. Moreover, Respondents asserted Simmons established that a plaintiff must only show commonality of officers, directors, or shareholders between predecessor and successor corporations in order to satisfy the mere continuation test.
The trial court ultimately entered judgment in favor of Respondents, finding Eagle to be a mere continuation of its predecessor. In its order, the trial court found the "predecessors [sic] and successor Eagle companies shared directors, officers, and shareholders." Citing Simmons , the trial court stated, "A successor corporation is a mere continuation of its predecessor when the predecessor and successor corporations have substantially the same officers, directors, or shareholders." (Emphasis added.). Finding five of Eagle's eight officers served in the same capacity with Eagle & Taylor, the trial court determined Eagle met the mere continuation test. The order further explained, "the Court finds that a review of Eagle's own website establishes that Eagle is a mere continuation of its predecessor corporation," finding Eagle retained the same president (Beeken) as its predecessor, and that it benefitted from its name recognition and history. Lastly, the trial court found it unnecessary to determine whether Simmons required "officers, directors, and shareholders" or "officers, directors, or shareholders" because Respondents had proven **262 commonality among all three classes in the successor and predecessor corporations. As a result, the court ordered Eagle to pay $187,758.42 in contribution and interest to Respondents.
In a split decision, the court of appeals affirmed the trial court's finding that Eagle was a mere continuation of Eagle & Taylor but reduced the contribution award to $78,333.33. Eagle Window & Door , Op. No. 2016-UP-168. Like the trial court, the court of appeals majority also found commonality of officers alone was sufficient to establish successor liability as a mere continuation.[6] Dissenting, Judge Konduros found Simmons and Walton v. Mazda of Rock Hill , 376 S.C. 301, 307, 657 S.E.2d 67, 70 (Ct. App. 2008), cert. denied Oct. 8, 2008, established that shareholder continuity was a critical component of the mere continuation test. The dissent further held the trial court erroneously relied upon the "continuation of operations" approach urged in Justice Burnett's dissent, which was ultimately rejected by the Simmons majority in favor of requiring continuity of ownership to establish a mere continuation. This Court granted Eagle's petition for a writ of certiorari to review the decision.
ISSUES
I. Did the court of appeals err in holding Eagle was a mere continuation of its predecessor corporation when there was no commonality of ownership?
*451 II. Did the court of appeals err in holding Eagle abandoned the issue of whether Nationwide failed to prove a manufacturing or design defect?
DISCUSSION
I. Successor Liability
Eagle argues the court of appeals' holding conflicts with the established law on successor liability in South Carolina. According to Eagle, the Simmons court recognized the presumption **263 that ordinarily, a successor corporation is not liable for the obligations of its predecessor, apart from four exceptions, including the mere continuation exception. Eagle's argument is straightforward: Simmons established the mere continuation exception only applies where there is continuity of ownership, and the court of appeals erred by finding commonality of corporate officers alone was sufficient to establish mere continuation. On the other hand, Respondents argue the court of appeals properly applied Simmons by requiring commonality between officers, directors, or shareholders, rather than all three groups. Consistent with their approach throughout this litigation, Respondents rely heavily on Justice Burnett's dissent and effectively ignore the Simmons majority's holding, arguing in favor of the broader enterprise continuation doctrine which the Simmons majority unequivocally rejected. We agree with Eagle that the court of appeals erred by finding that carryover of corporate officers resulted in a mere continuation when the record demonstrates there was no commonality of shareholders and directors between Eagle and its predecessor.
Ordinarily, in the absence of a statute, a successor or purchasing corporation is not liable for the debts of a predecessor or seller unless: (1) there was an agreement to assume such debts; (2) the circumstances surrounding the transaction amount to a consolidation or merger of the two corporations; (3) the successor company was a mere continuation of the predecessor; or (4) the transaction was entered into fraudulently for the purpose of wrongfully defeating creditors' claims. Brown v. American Ry. Express Co. , 128 S.C. 428, 123 S.E. 97 (1924). In this case we are concerned only with the third exception-mere continuation.
In Simmons , the Court was presented with a certified question asking whether a plaintiff may bring a product liability action based on a successor liability theory when the defendant corporation purchased the assets of the seller through a court-approved bankruptcy sale. 366 S.C. at 309, 622 S.E.2d at 213-14. A companion question then asked the Court to clarify which test is employed to determine whether there is successor liability for a company which purchased the assets of an unrelated company. Id. at 310, 622 S.E.2d at 214. The underlying product liability suit was premised on a defective **264 elevated scissorlift that collapsed and injured the plaintiff in a work-related accident. Id. The scissorlift was designed, manufactured, and sold by Mark Industries. After selling the scissorlift, and years before the plaintiff's injuries, Mark Industries filed for bankruptcy, selling many of its assets[7] to Terex Corp. at auction. Id. at 310-11, 622 S.E.2d at 214. To implement the asset purchase, Terex formed a wholly-owned subsidiary, Mark Lift Industries, Inc., which continued to manufacture scissorlifts at the former Mark plant for several months prior to relocating the assets and equipment to Terex's plant in Iowa. Id. There was no commonality of officers, directors, or stockholders between Mark Industries and Terex. Id. at 311, 622 S.E.2d at 215. After his injuries, the plaintiff filed suit against Mark Lift Industries and Terex, seeking recovery under a theory of successor liability.
Answering the first question in the affirmative, the Court held that a product liability claim could be maintained under a theory of successor liability, provided the plaintiff met one of the tests set forth in Brown , supra . Id. at 313, 622 S.E.2d at 215. The Court instructed the district court to apply Brown to determine whether there is successor liability when one company purchases the assets of an unrelated company.
*452 Id. at 312, 622 S.E.2d at 215. In response to Justice Burnett's dissent, and critical to the current case, the Court included this footnote with its discussion of the Brown test:
Essentially, the dissent advocates an expansion of the mere continuation exception. However, as noted by the dissent, the majority of courts interpreting the mere continuation exception have found it applicable only when there is commonality of ownership,i.e., the predecessor and successor corporations have substantially the same officers, directors, or shareholders. We decline to extend the exception to cases in which there is no such commonality of officers, directors and shareholders. Further, we find no conflict with Holloway v. John E. Smith's Sons Co., 432 F.Supp. 454 (D.S.C.1977). We do not find that the Holloway court established a new test of successor liability. Although **265 the court in Holloway did not cite the test established in Brown , it applied the mere continuation exception. Unlike the present case in which Mark Lift and Terex did not share common officers, directors and shareholders, it appears from a reading of Holloway that there was, indeed, a commonality of ownership. Accordingly, the mere continuation exception was properly applied to that case.
Id. at 312 n.1, 622 S.E.2d at 215 n.1 (emphasis in original).
Dissenting, Justice Burnett recognized the plaintiff was arguing for an expansion of successor liability law beyond the four exceptions outlined in Brown , urging the Court to adopt either a continuity of enterprise exception or product line exception. Simmons v. Mark Lift Indus., Inc. , 366 S.C. 308, 315, 622 S.E.2d 213, 216-17 (2005) (Burnett, J., dissenting). Analyzing the mere continuation exception, Justice Burnett acknowledged "[m]ost courts traditionally have applied" the exception "only when there is commonality of ownership, i.e. , the predecessor and successor corporations have substantially the same officers, directors, or shareholders,...." Id. at 316, 622 S.E.2d at 217 (citing Taylor v. Atlas Safety Equip. Co. , 808 F.Supp. 1246, 1251 (E.D. Va. 1992) ). Justice Burnett then explained he would not interpret the mere continuation exception as narrowly as other courts and would instead consider a number of factors, including:
(1) whether the successor, taking lawful advantage of the predecessor's accumulated goodwill and reputation, held itself out to the world as a continuation of the predecessor through continued use of the predecessor's corporate identity, trade names, advertising, or other intellectual property; (2) whether the successor continued to manufacture substantially the same product line as the predecessor, recognizing that manufacturing activity by its nature involves modification of product lines and elimination of unprofitable items; (3) whether the successor retained the predecessor's managers, employees, or sales force; (4) whether the successor continued to use the predecessor's equipment, supplier, dealer, or customer lists; (5) whether the successor assumed those liabilities and obligations of the predecessor ordinarily necessary for the continuation of normal business operations of the predecessor; and (6) whether the successor's officers, **266 directors, or shareholders are substantially the same as the predecessor's.
Id. at 323, 622 S.E.2d at 221. Thus, Justice Burnett advocated for a more flexible approach to the mere continuation test, beyond the scope of the traditional test which relied on continuity of ownership.[8]
The issue now before the Court hinges on the proper application of the mere continuation test established in Simmons . Eagle argues the trial court and court of appeals erred by holding Simmons only required a plaintiff to prove commonality of officers, directors, or shareholders, rather than all three classes, to establish mere continuation. We agree with Eagle. The confusion arises from the use of the disjunctive "or" when the Simmons majority explained that under the traditional approach, the mere continuation exception is "applicable only when there is *453 commonality of ownership, i.e., the predecessor and successor corporations have substantially the same officers, directors, or shareholders." Simmons , 366 S.C. at 312, n. 1, 622 S.E.2d at 215 n. 1 (emphasis omitted). Despite the use of "or," the preceding clause of that sentence indicates that commonality of ownership is required for the exception to apply. In the corporate context, without commonality of shareholders, there is no commonality of ownership. Moreover, the sentence that follows carries the full force and effect of the majority's holding: "We decline to extend the exception to cases in which there is no such commonality of officers, directors and shareholders." Id. (emphasis added).
We hold the court of appeals erred by finding Simmons only required commonality of officers to establish a mere continuation while failing to acknowledge the clear and unequivocal language declining to extend the exception beyond instances where there is commonality of officers, directors, and shareholders. Contrary to the court of appeals' holding in this case, an earlier court of appeals opinion also interpreted the mere continuation exception from Simmons to require commonality between officers, directors, and shareholders. See **267 Walton v. Mazda of Rock Hill , 376 S.C. 301, 307, 657 S.E.2d 67, 70 (Ct. App. 2008), cert. denied Oct. 8, 2008 ("In Simmons v. Mark Lift Industries, Inc. , the South Carolina Supreme Court declined to extend the mere continuation exception to situations where there is no commonality between officers, directors, and shareholders of the seller and purchaser.").
The trial court's "mere continuation" analysis mirrored Justice Burnett's dissent and focused heavily on Eagle's name, location, website, and goodwill. This analysis was error, as it falls within the continuity of enterprise theory of successor liability that the Simmons majority flatly rejected. See Turner v. Bituminous Cas. Co. , 397 Mich. 406, 244 N.W.2d 873, 883-84 (1976) (setting forth factors to determine successor liability based on continuity of enterprise, including whether (1) there was retention of key personnel, assets, and corporate name; (2) the purchasing corporation assumed liabilities and obligations of the seller ordinarily necessary for the continuation of the business; and (3) the purchasing corporation held itself out to the world as the effective continuation of the seller). While there arguably may be merits to expanding South Carolina's successor liability test to include the continuity of enterprise theory, that is not the question currently before the Court, nor is that the argument advanced by Respondents. Instead, Respondents conflate the theories of successor liability and transform the mere continuation analysis into something more akin to continuity of enterprise. See Grand Laboratories, Inc. v. Midcon Labs of Iowa , 32 F.3d 1277, 1283 (8th Cir.1994) (explaining the continuity of enterprise exception is "significantly different" from the mere continuation exception, with the focus on the continuity of the seller's business operation and not the continuity of management and ownership).
The Simmons majority's decision to limit the mere continuation exception to cases where there is commonality of officers, directors, and shareholders is consistent with the traditional application of the doctrine. See, e.g. , Grand Laboratories, Inc. , 32 F.3d at 1283 ("The traditional mere continuation exception focuses on the continuation of management and ownership between the predecessor and successor corporations."); Leannais v. Cincinnati, Inc. , 565 F.2d 437, 440 (7th Cir.1977) ("The key element of a 'continuation' is a common identity of the officers, directors and stockholders in the selling and purchasing corporations.");
**268 Vernon v. Schuster , 179 Ill.2d 338, 228 Ill.Dec. 195, 688 N.E.2d 1172, 1176 (1997) ("In determining whether one corporation is a continuation of another, the test used in the majority of jurisdictions is whether there is a continuation of the corporate entity of the seller -not whether there is a continuation of the seller's business operation , as the dissent appears to emphasize.... In accord with the majority view, our appellate court has 'consistently required identity of ownership before imposing successor liability under [the continuation exception].' ") (emphasis in original) (internal citations omitted); Phillip I. Blumberg, The Continuity of the Enterprise Doctrine: Corporate Successorship in United States Law , 10 Fla. J. Int'l L. 365, 372 (1996) ("In applying *454 the mere continuation doctrine, courts have rejected the 'totality of the circumstances' standard and instead have insisted that all of the necessary elements must be satisfied."). While some states have expanded successor liability to include enterprise continuity,[9] the existence of these cases alone is not sufficient to override the express language contained in Simmons signifying that the Court declined to expand the doctrine where there is no commonality between officers, directors, and shareholders. Accordingly, with only commonality of officers but no commonality of directors or shareholders, the court of appeals erred in affirming the trial court's conclusion that Eagle is a mere continuation of Eagle & Taylor.
As an alternative argument, Respondents suggest the Court need not debate the proper application of Simmons because there was in fact commonality among officers, directors, and shareholders in this case. This assertion is factually incorrect; we found no evidence in the record to support the trial court's finding that there was any shareholder continuity between Eagle and Eagle & Taylor.[10]
Eagle & Taylor was a wholly-owned subsidiary of AAPC at the time of the asset sale, meaning AAPC held 100% of the **269 corporation's stock. After the sale, AAPC did not acquire any shares in the newly-formed Eagle corporation, nor did it possess any ownership in Linsalata. Contrary to the trial court's order, Stephen Perry's affidavit stated there was no commonality of ownership between the predecessor and successor entities, and none of the officers of Eagle & Taylor (who went on to become officers of Eagle and are the only possible source of shareholder commonality between Eagle and Eagle & Taylor) possessed any ownership interest in the predecessor prior to the sale. While Beeken and other officers were given shares in Eagle after the acquisition, none of them owned any shares in Eagle & Taylor. Moreover, Beeken served as a director only with Eagle and enjoyed no such role at Eagle & Taylor. The sole director of Eagle & Taylor had no role with Eagle after the acquisition. Thus, the record indicates the corporate officers were the only group with commonality between Eagle and its predecessor, while no continuity existed with directors and shareholders. Because there was no commonality of shareholders and directors between Eagle and Eagle & Taylor, we reverse the court of appeals' finding of successor liability.
We recognize the mere continuation test is a strict one, but we temper our holding by noting it is not completely inflexible. While commonality of ownership is a keystone of the analysis and almost always sufficient to establish mere continuation when paired with common directors and officers, we stress control is an essential consideration as well. Typically, ownership and control are found in tandem; however, there may be instances where directors or officers-lacking ownership-exert such control and influence over a corporation that their continued presence after a corporate acquisition is sufficient to establish successor liability.[11] Although the mere continuation test is a high burden for a plaintiff to meet, it is intentionally so, as corporate law generally favors the free transfer of assets and disfavors successor liability. However, our successor liability doctrine affords protection for plaintiffs in those cases where a corporate sale is driven by a desire to **270 escape the predecessor's liabilities and obligations. Where the changing of corporate hats is tainted by such fraudulent intent, the successor corporation remains liable, *455 even when the test for mere continuation is not otherwise satisfied.
II. Failure to Plead Defect
Eagle claims the court of appeals erred in finding it abandoned the issue of whether Respondents failed to prove a design or manufacturing defect in the windows. Eagle argues that because it included the issue in its statement of issues on appeal, it preserved the argument despite failing to raise it anywhere else in the brief. We find no merit in this argument as our appellate jurisprudence has clearly established that "[a]n issue raised on appeal but not argued in the brief is deemed abandoned and will not be considered by the appellate court." Wright v. Craft , 372 S.C. 1, 20, 640 S.E.2d 486, 497 (Ct. App. 2006).
CONCLUSION
Applying the mere continuation test as enunciated in Simmons , we find the trial court erred in holding Eagle to be the mere continuation of Eagle & Taylor, and therefore we reverse the court of appeals.
REVERSED.
BEATTY, C.J., KITTREDGE, JAMES, JJ., and Acting Justice Diane Goodstein, concur.

366 S.C. 308, 622 S.E.2d 213 (2005).

Linsalata is an investment partnership owned and managed by private equity buyout firm Linsalata Capital Partners.

At the time of litigation, Eagle's website acknowledged that it was under new ownership since 2002 when it was acquired by Linsalata.

AAPC's two directors were controlling shareholders George Hofmeister and Joseph Dominijanni.

The trial court originally granted Eagle's motion to dismiss based on the bankruptcy sale's "free and clear" provisions, but the order granting dismissal was reversed by this Court, see Nationwide Mut. Ins. Co., Inc. v. Eagle Windows & Doors, Inc. , 394 S.C. 54, 714 S.E.2d 322 (2011), wherein we held the contribution action was not barred by the terms of the bankruptcy sale, and the bankruptcy court did not retain jurisdiction over the contribution suit.

The majority opinion found Eagle & Taylor was a "wholly-owned subsidiary" of AAPC but also stated the trial court found Nationwide had proven " 'that officers, directors, and stockholders remained in the successor corporation from the predecessor corporation.' " The opinion does not explain these factual inconsistencies with regard to ownership.

The assets purchased by Terex included the inventory of supplies, raw materials, work in progress, finished goods, trademarks, service marks, trade names, goodwill, all intellectual property, and technology. Id. at 311, 622 S.E.2d at 214.

Admittedly, if Justice Burnett's dissent had carried the day, the trial court and the court of appeals majority would be correct in finding that Eagle is a mere continuation of its predecessor corporation.

See, e.g., Stanley v. Miss. State Pilots of Gulfport, Inc. , 951 So.2d 535, 539-40 (Miss. 2006) ("[W]e adopted the 'continuity of enterprise' theory to hold a successor corporation liable for the predecessor's debts where the successor benefitted from the goodwill of the predecessor without sharing the liabilities.").

In support of this assertion, Respondents cite only to the conclusory findings of fact in the trial court's order.

Such a scenario is not present in this case, as the record indicates the asset sale was engineered primarily by Linsalata, and the officers who continued in similar capacities with Eagle were merely along for the ride, rather than the drivers.